SCOTT A. KRONLAND (SBN 171693)
JEFFREY B. DEMAIN (SBN 126715)
REBECCA MORYL LEE (SBN 305119)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail:  skronland@altber.com
          jdemain@altber.com
          rlee@altber.com

Attorneys for the Union Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGIA BABB, *et al.*,<br><br>                 Plaintiffs,<br><br>         v.<br><br>CALIFORNIA TEACHERS ASSOCIATION, *et al.*,<br><br>                 Defendants. | CASE NO.:  8:18-cv-00994-JLS-DFM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNION DEFENDANTS' MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS, AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**<br><br>F.R.C.P. 12(c) and (h)(3), 56<br><br>Hearing Date:  January 18, 2019<br>Hearing Time: 10:30 a.m.<br>Location: Courtroom 10A<br><br>Judge:  The Hon. Josephine L. Staton |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION ........................................................................................................... 1

THE ALLEGATIONS OF THE SECOND AMENDED COMPLAINT .................... 2

DISCUSSION .................................................................................................................. 3

    I.    Plaintiffs' Claims for Prospective Relief Are Moot Because
        Fair-Share Fee Collection Permanently Ended After *Janus* .......................... 3

    II.   Plaintiffs Cannot Recover Monetary Relief for Pre-*Janus*
        Fees Under Section 1983 Because the Union Defendants Collected
        the Fees in Compliance with State Statutes and Controlling Supreme
        Court Precedent. ............................................................................................... 6

    III.  Plaintiffs' State Common Law Claims Are Preempted by the
        Educational Employment Relations Act. ....................................................... 12

    IV.  Plaintiffs' State Common Law Claims Also Are Precluded by
        California Government Code §1159. ............................................................. 14

    V.   In the Alternative, All of Plaintiff Babb's Claims, and Defendant
        Schmus's Section 1983 Claim, Should Be Dismissed as Untimely ............. 15

CONCLUSION.............................................................................................................. 15

APPENDIX:  California Government Code Section 1159

i

MPA ISO MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS, AND IN
THE ALTERNATIVE FOR SUMMARY JUDGMENT, Case No. 8:18-cv-00994-JLS-DFM

# TABLE OF AUTHORITIES

**Cases**

*Abood v. Detroit Board of Education*,
 431 U.S. 209 (1977)..................................................................................3, 6, 11

*Agostini v. Felton*,
 521 U.S. 203 (1997)...................................................................................11

*Board of Regents of Univ. of Wis. System v. Southworth*,
 529 U.S. 217 (2000)...................................................................................6

*Butler v. Nat'l Community Renaissance of California*,
 766 F.3d 1191 (9th Cir. 2014) ...................................................................15

*Chicago Teachers Union, Local No. 1 v. Hudson*,
 475 U. S. 292 (1986)..................................................................................6

*Clement v. City of Glendale*,
 518 F.3d 1090 (9th Cir. 2008) ...................................................................8

*Cumero v. PERB*,
 49 Cal.3d 575 (1989) ..................................................................9, 10, 13, 14

*Danielson v. Inslee*,
 No. 18-cv-5206-RJB, 2018 WL 3917937 (W.D. Wash. Aug. 16, 2018)............3, 6

*Davis v. FEC*,
 554 U.S. 724 (2008)....................................................................................5

*Davis v. United States*,
 564 U.S. 229 (2011)....................................................................................10

*Ellis v. Railway Clerks*,
 466 U. S. 435 (1984)..................................................................................6

*El Rancho Unified School Dist. v. Nat'l Educ. Ass'n*,
 33 Cal.3d 946 (1983) .................................................................................12

*Franklin v. Fox*,
 No. C 97-2443 CRB, 2001 WL 114438 (N.D. Cal. Jan. 22, 2001) ...................8, 9

ii

MPA ISO MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS, AND IN
THE ALTERNATIVE FOR SUMMARY JUDGMENT, Case No. 8:18-cv-00994-JLS-DFM

*Friedrichs v. Cal. Teachers Ass'n*,
    2014 WL 10076847 (9th Cir. Nov. 18, 2014), *aff'd by an equally
    divided Court*, 136 S.Ct. 1083 (2016) ............................................................9, 11

*Friedrichs v. Cal. Teachers Ass'n*,
    2013 WL 9825479 (C.D. Cal. Dec. 5, 2013)........................................................9

*Gator.com Corp. v. L.L. Bean, Inc.*,
    398 F.3d 1125 (9th Cir. 2005) ..............................................................................5

*Glickman v. Wileman Brothers & Elliott, Inc.*,
    521 U.S. 457 (1997)..............................................................................................6

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)..............................................................................................7

*Harris v. Quinn*,
    134 S.Ct. 2618 (2014)....................................................................................10, 11

*Hoffman v. Inslee*,
    No. C14-200-MJP, 2016 WL 6126016 (W.D. Wash. Oct. 20, 2016) ..................10

*Janus v. AFSCME, Council 31*,
    138 S.Ct. 2448 (June 27, 2018) ..................................................................*passim*

*Jarvis v. Cuomo*,
    660 F. App'x 72 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 1204 (2017) ................10

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
    20 F.3d 1250 (3d Cir. 1994) .................................................................................8

*Keller v. State Bar of Cal.*,
    496 U.S. 1 (1990)..................................................................................................6

*Lamberty v. Connecticut State Police Union*,
    3:15-cv-00378-VAB, 2018 WL 5115559 (D. Conn. Oct. 19, 2018) .................3, 6

*Leek v. Washington Unified School Dist.*,
    124 Cal.App.3d 43 (1981) ...................................................................................13

*Lehnert v. Ferris Faculty Assn.*,
    500 U. S. 507 (1991)..............................................................................................6

iii

*Lemon v. Kurtzman*,
　411 U.S. 192 (1973) ............................................................................ 9, 11

*Link v. Antioch Unified School Dist.*,
　142 Cal.App.3d 765 (1983) ....................................................................... 13

*Locke v. Karass*,
　555 U. S. 207 (2009) .................................................................................. 6

*Lugar v. Edmondson Oil Co.*,
　457 U.S. 922 (1982) ............................................................................... 7, 8

*Payne v. Tennessee*,
　501 U.S. 808 (1991) .................................................................................. 11

*Pinsky v. Duncan*,
　79 F.3d 306 (2d Cir. 1996) .................................................................... 8, 10

*San Jose Teachers Ass'n v. Superior Court*,
　38 Cal.3d 839 (1985) ................................................................................ 13

*Steffel v. Thompson*,
　415 U.S. 452 (1974) ................................................................................... 5

*Timbisha Shoshone Tribe v. Dep't of Interior*,
　824 F.3d 807 (9th Cir. 2016) ...................................................................... 5

*Vector Research, Inc. v. Howard & Howard Attorneys, P.C.*,
　76 F.3d 692 (6th Cir. 1996) ........................................................................ 8

*Winner v. Rauner*,
　No. 15 CV 7213, 2016 WL 7374258 (N.D. Ill. Dec. 20, 2016) ........................... 10

*Wyatt v. Cole*,
　504 U.S. 158, __ (1992) ...................................................................... 7, 8, 9

*Wyatt v. Cole*,
　994 F.2d 1113 (5th Cir. 1993), *cert. denied*, 510 U.S. 977 (1993) ................. 7, 10

*Yohn v. Cal. Teachers Ass'n*,
　No. 8:17-cv-202-JLS-DFM, *Order Granting Defs.' Motions to Dismiss and
　Denying Pls.' Motion for Summary Judgment as Moot,* Doc. No. 198
　(C.D. Cal. Sept. 28, 2018) ................................................................ 3, 6, 9, 12

iv

MPA ISO MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS, AND IN
THE ALTERNATIVE FOR SUMMARY JUDGMENT, Case No. 8:18-cv-00994-JLS-DFM

**Federal Statutory Authorities**

28 U.S.C. § 2201 ................................................................................................. 2

42 U.S.C. §1983 ........................................................................................ *passim*

**State Statutory Authorities**

Cal. Civ. Proc. Code § 338(c)(1) ...................................................................... 15

Cal. Gov't Code
    §1159 ........................................................................................................ 1, 14
    §1159(a) ......................................................................................................... 15
    §§3540-3549.3 ............................................................................................... 12
    §3541.5 .................................................................................................... 12, 14
    §3543(a) ......................................................................................................... 13
    §3546 ............................................................................................................... 6
    §3546(a) ......................................................................................................... 13

SB 846 ........................................................................................................ 14, 15
    § 1 .................................................................................................................. 14
    §10 ................................................................................................................. 14

**Federal Rules and Regulations**

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 3

**INTRODUCTION**

Plaintiffs filed this action shortly before *Janus v. AFSCME, Council 31*, 138 S.Ct. 2448 (June 27, 2018), overruled 40 years of precedent and held that compulsory union fair-share fees are now unconstitutional.  Plaintiffs are California public school district employees who paid fair-share fees prior to *Janus* and who seek two forms of relief.  First, Plaintiffs ask that compulsory fair share fees be declared unconstitutional and enjoined.  Second, Plaintiffs ask that the Union Defendants be required to repay – to a putative class of all non-member public school district employees in California – all the fair-share fees the Union Defendants received before *Janus.*

Plaintiffs' claims for prospective relief should be dismissed for lack of subject matter jurisdiction.  The Union Defendants and Plaintiffs' public employers immediately complied with *Janus*, and the collection of compulsory fair-share fees already ended.  Plaintiffs are not currently being required to pay fair-share fees, and there is no likelihood they would be required to do so in the future because *Janus* held such requirements unconstitutional.  Thus, Plaintiffs' claims for prospective relief are moot.

Plaintiffs' claims for retrospective monetary relief should be dismissed as meritless.  Plaintiffs assert a federal law claim under 42 U.S.C. §1983 for refunds of pre-*Janus* fees, but that claim cannot succeed because the Union Defendants received the fees in compliance with California statutes and then-controlling and directly on-point United States Supreme Court precedent that expressly authorized fair-share fees.  A private party is not retrospectively liable under §1983 for having followed the law of the land.  Plaintiffs also assert state common law tort claims for the same relief, but those claims are preempted by California's Educational Employment Relations Act and, in any event, would be barred by California Government Code §1159.  Some Plaintiffs' claims are also time-barred.

## THE ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

Plaintiffs' Second Amended Complaint ("SAC"), Doc. No. 14, is brought on behalf of seven current or former California public school employees against three unions, California Teachers Association ("CTA"), National Education Association ("NEA"), and United Teachers of Los Angeles ("UTLA"), collectively, the "Union Defendants," and against four PERB members. SAC ¶¶10-20.  Plaintiffs allege that they are not and/or were not members of the Union Defendants, but were obligated under California law pay fair-share fees to the Union Defendants as a condition of their public employment.  *Id*. at ¶¶14-20, 22; *see also id.* at ¶23 (alleging that such fees were collected "under color of state law").  Plaintiffs further allege that the compulsory collection of such fees violates their constitutional rights under *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (June 27, 2018).  SAC at ¶21.[1]

On the basis of these allegations, Plaintiffs allege claims under 42 U.S.C. § 1983, the federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the state common law of conversion, trespass to chattels, replevin, unjust enrichment, and restitution.  SAC ¶¶33-34.  Plaintiffs seek to represent a class of all current or former California public school employees who are or were non-members of Defendant CTA but were required to pay fair-share fees, and they seek to require CTA to represent a defendant class of all of its chapters and affiliates.  *Id*. at ¶¶ 10, 25-32, 35(a) & (b).  Plaintiffs seek declaratory and injunctive relief against compulsory fair-share fees, retrospective refunds of fees previously collected, and awards of costs and attorneys' fees.  *Id.* ¶35(c)-(j).  The Union Defendants filed an answer to the Second Amended Complaint, Doc. No. 52.

---

[1]  Plaintiffs Pecanic-Lee and van der Fluit remain employed as California public school teachers, SAC ¶¶18 & 20, whereas Plaintiffs Babb, Frangimore, Happ, Holbrook, Schmuss are no longer so employed, *id*. at ¶¶ 14-17, 19.

# DISCUSSION

### I. Plaintiffs' Claims for Prospective Relief Are Moot Because Fair-Share Fee Collection Permanently Ended After *Janus*.

Plaintiffs' claims for prospective relief against compulsory fair-share fees do not present an Article III case or controversy, and therefore should be dismissed under FRCP 12(b)(1), for the reasons stated in this Court's prior decision in *Yohn*. *See Yohn v. Cal. Teachers Ass'n*, No. 8:17-cv-202-JLS-DFM, Order Granting Defs.' Motions to Dismiss and Denying Pls.' Motion for Summary Judgment as Moot, Doc. No. 198 (C.D. Cal. Sept. 28, 2018); *see also Lamberty v. Connecticut State Police Union*, 3:15-cv-00378-VAB, 2018 WL 5115559 (D. Conn. Oct. 19, 2018) (dismissing similar claim for prospective relief against fair-share fees for lack of jurisdiction); *Danielson v. Inslee,* No. 18-cv-5206-RJB, 2018 WL 3917937 (W.D. Wash. Aug. 16, 2018) (same).

**1.** In *Janus*, the Supreme Court overruled *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), which had upheld the constitutionality of requiring public employees to pay fair-share fees for union representation, and instead held that that practice "violates the First Amendment and cannot continue." 138 S.Ct. at 2486. Upon *Janus*'s announcement, the Union Defendants immediately and unequivocally complied with the new decision.

On the day of the *Janus* decision, Defendant CTA (which accepts fair-share fees on behalf of its national affiliate, NEA, as well as most of its local affiliates) wrote to all California school districts with which CTA or those local affiliates have collective bargaining relationships to notify them that they must "immediately cease all payroll deductions of fair share fees, for all fee payers in [the applicable] bargaining unit," and stop transferring such fees to CTA or its local affiliates, which, "[d]ue to the change in the law," will "no longer collect fair share fees." Declaration of Wei Pan in Support of Motion to Dismiss ("Pan Decl."), Exh. A; *see also id.* ¶¶ 3-4, 7-10. CTA also sent letters to fair-share fee payers notifying them

3

1  that they are "no longer legally obligated to pay fair share fees for the union's
2  representational services," and that CTA was instructing school districts "to comply
3  with the *Janus* decision" by "immediately ceas[ing] payroll deduction of fair share
4  fees." *Id.*, ¶9 & Exh. B.  Those letters further explained that, if any post-*Janus* fair-
5  share fees have been collected or are subsequently inadvertently collected and
6  transmitted to CTA or its local affiliates, they will be escrowed and refunded, and
7  not used to support union activities.  *See id.*; *see also id.* ¶¶13, 14.  CTA also
8  removed the codes for fair-share fees from the data files it transmits to school
9  districts, so no further fair-share fees can be deducted.  *Id.* ¶12.

10        The only two Plaintiffs who are still employed in California public schools,
11  and thus could even theoretically remain subject to a fair-share fee requirement, are
12  Plaintiffs Pecanic-Lee and van der Fluit.  *Compare* SAC ¶¶18 & 20 *with* SAC ¶¶14-
13  17, 19.

14        Plaintiff Pecanic-Lee is employed by the Hacienda La Puente Unified School
15  District, which is one of the school districts for which CTA handles fee collections
16  for its local affiliate.  SAC ¶18; Pan Decl. ¶10.  Fair-share fee collections in that
17  school district therefore ended after *Janus*, and no further fair-share fees have been
18  collected from Plaintiff Pecanic-Lee.  Pan Decl. ¶15.  Additionally, that school
19  district entered into an agreement with CTA's local affiliate to delete the fair-share
20  fee provision from the collective bargaining agreement.  *Id.* ¶14 & Exh. C.
21  Moreover, CTA sent refunds, with interest, to school district employees who are
22  paid on a 10-month basis, including Plaintiff Pecanic-Lee, of all previously
23  collected fair-share fees intended to cover the period from June 27-August 31, 2018.
24  *Id.* ¶¶17-21.

25        Plaintiff van der Fluit is an employee of the Los Angeles Unified School
26  District.  SAC ¶20.  Defendant UTLA handles fee collections (for itself and its
27  affiliates CTA and NEA) from the Los Angeles School District ("LAUSD").
28  Declaration of Harry Mar in Support of Motion to Dismiss ("Mar Decl."), ¶¶4, 6.

4

1   On the day of the *Janus* decision, UTLA notified LAUSD to "immediately stop"

2   fair-share fee deductions "from UTLA bargaining unit employees who are not

3   UTLA members."  *Id.* ¶10 & Exh. A.  UTLA and LAUSD had already agreed on

4   compliance plans to stop fair-share deductions if the Supreme Court ruled fair-share

5   fee collection unconstitutional.  *Id.* ¶8.  LAUSD immediately stopped fair-share fee

6   deductions, and no fair-share fees have been deducted since the June 2018 payroll.

7   *Id.* ¶11.  UTLA also removed the codes for fair-share fees from the data files it

8   transmits to LAUSD, so no further fair-share fees can be deducted.  *Id.* ¶¶7-14.

9   Moreover, UTLA sent refunds, with interest, to LAUSD employees, including

10  Plaintiff van der Fluit, of the fair-share fees deducted from the June 2018 payroll.

11  *Id.* ¶¶12-13.

12       Meanwhile, the PERB General Counsel has announced that California

13  statutes providing for the deduction of fair-share fees are unenforceable, *see* Doc.

14  No. 54-1, and the California Attorney General has issued an Advisory about *Janus*

15  explaining that "a California public-sector employer may no longer automatically

16  deduct a mandatory agency fee from the salary or wages of a non-member public

17  employee who does not affirmatively choose to financially support the union."

18  Declaration of Scott A. Kronland, Exh. B.

19       **2.**       For a federal court to have subject matter jurisdiction, Article III

20  requires an actual, live controversy between the parties at each stage of the

21  proceedings.  *Timbisha Shoshone Tribe v. Dep't of Interior*, 824 F.3d 807, 812 (9th

22  Cir. 2016); *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128-29 (9th Cir.

23  2005) (en banc) (citing *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10 (1974)).  And

24  Plaintiffs must establish Article III jurisdiction for each form of relief they seek.

25  *Davis v. FEC,* 554 U.S. 724, 734 (2008).

26       There is no longer a live controversy about the collection of compulsory fair-

27  share fees, which ceased immediately after *Janus* in response to that decision.  The

28  Union Defendants were following the law in good faith before *Janus*, and they

5

immediately and unequivocally complied with *Janus* when the Supreme Court changed the law.  Likewise, Plaintiffs' public employers unequivocally stopped collecting any compulsory fair-share fees.  As this Court held in *Yohn*, "the challenged conduct of collecting agency fees cannot be reasonably expected to recur" given the Supreme Court's ruling in *Janus* and, therefore, Plaintiffs' claims for prospective relief are moot.  *Yohn*, Doc. No. 198, at 7; *see also Lamberty*, 2018 WL 5115559 at *6-9; *Danielson*, 2018 WL 3917937 at *1-3.

> II. **Plaintiffs Cannot Recover Monetary Relief for Pre-*Janus* Fees Under Section 1983 Because the Union Defendants Collected the Fees in Compliance with State Statutes and Controlling Supreme Court Precedent.**

Plaintiffs seek the refund of pre-*Janus* fair-share fees pursuant to their claim under 42 U.S.C. §1983.  *See* SAC ¶¶33 & 35(g).  But, as Plaintiffs acknowledge, the collection of fair-share fees was authorized by California statute, *see* SAC ¶¶22-23.  And before *Janus*, the Supreme Court had squarely held, and re-affirmed many times, that requiring public employees to pay fair-share fees as a condition of public employment was constitutional.[2]  It is well-established that when private parties act in good-faith reliance on presumptively valid state laws, they have a complete defense to §1983 liability.  Because the Union Defendants received pre-*Janus* fair-share fees in accordance with a California statute, SAC ¶¶23 (citing Cal. Gov't Code §3546), that was constitutional under then-controlling Supreme Court precedent, they are not retrospectively liable here.

---

[2] *Abood,* 431 U.S. at 232; *Locke v. Karass*, 555 U. S. 207, 213-14 (2009); *Lehnert v. Ferris Faculty Assn.*, 500 U. S. 507, 519 (1991); *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U. S. 292, 301-02 (1986); *Ellis v. Railway Clerks*, 466 U. S. 435, 455-57 (1984); *see also Keller v. State Bar of Cal.*, 496 U.S. 1, 9-17 (1990); *Board of Regents of Univ. of Wis. System v. Southworth*, 529 U.S. 217, 230-32 (2000); *Glickman v. Wileman Brothers & Elliott, Inc.*, 521 U.S. 457, 471-73 (1997).

6

MPA ISO MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS, AND IN
THE ALTERNATIVE FOR SUMMARY JUDGMENT, Case No. 8:18-cv-00994-JLS-DFM

1.      Section 1983 provides a cause of action for the deprivation of an individual's "rights, privileges, or immunities secured by the Constitution and laws" under color of state law.  42 U.S.C. § 1983.

In certain circumstances, private parties may be sued under §1983 if they act under color of state law.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). While public officials exercising discretionary duties who face §1983 claims are entitled to "qualified immunity" from liability unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the Supreme Court has held that private parties cannot invoke "qualified immunity," *Wyatt v. Cole*, 504 U.S. 158, 168-69 (1992).

But private parties are entitled to a similar defense to monetary liability when they are relying on presumptively valid state laws.  *Every* member of the *Wyatt* Court concluded that *some* defense to monetary liability, whether qualified immunity or a good faith defense, is available to private defendants.  The three dissenting Justices concluded that qualified immunity itself is available to private defendants, while the majority opinion observed that such defendants "could be entitled to an affirmative defense based on good faith."  *Id.* at 169.  The Court's acknowledgement of the availability of a good faith defense was elaborated in separate opinions joined by a majority of the Court.  *See id.* at 169 (Kennedy, J., joined by Scalia, J., concurring); *id.* at 175 (Rehnquist, C.J., joined by Souter and Thomas, JJ., dissenting); *see also Lugar*, 457 U.S. at 942 n.23 (acknowledging unfairness of imposing damages liability on private parties who "innocently make use of seemingly valid state laws").

On the basis of these opinions, the Fifth Circuit squarely held on remand "that private defendants sued on the basis of *Lugar* may be held liable for damages under §1983 only if they failed to act in good faith in invoking the unconstitutional state procedures…."  *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993), *cert. denied*, 510 U.S. 977 (1993).  Since *Wyatt*, this holding has been adopted by every Court of

7

1   Appeals to address this issue—including the Ninth Circuit.  *See Clement v. City of*

2   *Glendale*, 518 F.3d 1090, 1096-97 (9th Cir. 2008) (recognizing and applying good

3   faith defense); *Pinsky v. Duncan*, 79 F.3d 306, 311-12 (2d Cir. 1996); *Vector*

4   *Research, Inc. v. Howard & Howard Attorneys, P.C.*, 76 F.3d 692, 698-99 (6th Cir.

5   1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1275-78 (3d

6   Cir. 1994); *see also Franklin v. Fox*, No. C 97-2443 CRB, 2001 WL 114438, at *6

7   (N.D. Cal. Jan. 22, 2001) (noting "universal[]" recognition of good faith defense).

8       In *Clement*, a towing company that obeyed a police order to tow a car that was

9   parked on private property with the property owner's permission was granted

10   judgment in the car owner's §1983 suit, based on the company's adherence to

11   governing law.  *Clement*, 518 F.3d at 1093.  The Ninth Circuit affirmed, reasoning

12   that the company had done "its best to follow the law" and that its actions "appeared

13   to be permissible under both local ordinance and state law."  *Id.* at 1097.

14       The availability of the good faith defense in §1983 actions recognizes the

15   inequity of holding private parties liable for damages for acting under color of state

16   law when government officials would be immune from liability for the same

17   conduct.  *See, e.g.*, *Wyatt*, 504 U.S. at 168 ("[P]rinciples of equality and fairness may

18   suggest … that private citizens … should have some protection from liability, as do

19   their government counterparts[.]"); *Lugar*, 457 U.S. at 942 n.23 (unfairness to

20   private parties of being held liable for "mak[ing] use of seemingly valid state laws"

21   "should be dealt with … by establishing an affirmative defense" and "[a] similar

22   concern is at least partially responsible for the availability of a good faith defense, or

23   qualified immunity, to state officials").  As Judge Charles Breyer has explained, it

24   would be "manifestly unfair to hold that the state actor – whose participation is

25   required for there to be a §1983 violation at all – is entitled to qualified immunity,

26   but hold the private actor … liable for the plaintiff's damages."  *Franklin*, 2001 WL

27   114438, at *5.  As these courts also recognize, the good faith defense is fully

28   consistent with the purpose of §1983 "to deter state actors from using the badge of

8

1    their authority to deprive individuals of their federally guaranteed rights," *Wyatt*, 504

2    U.S. at 161, because if a state actor's conduct is consistent with then-binding

3    precedent, the threat of §1983 liability "will not deter [that] conduct," *Franklin*, 2001

4    WL 114438, at *6.

5        **2.**    Plaintiffs' §1983 claim seeks the refund of fair-share fees collected

6    before *Janus* issued, at a time when California statues and controlling U.S. Supreme

7    Court precedent expressly allowed the collection of such fees.  This Court, the Ninth

8    Circuit, and the California Supreme Court had all ruled that California's statutory

9    fair-share fee system was constitutional.  *See Friedrichs v. Cal. Teachers Ass'n*,

10   2014 WL 10076847 (9th Cir. Nov. 18, 2014), *aff'd by an equally divided Court*, 136

11   S.Ct. 1083 (2016); *Friedrichs v. Cal. Teachers Ass'n*, 2013 WL 9825479 (C.D. Cal.

12   Dec. 5, 2013); *Cumero v. PERB*, 49 Cal.3d 575, 581-82 (1989).  As this Court

13   recognized, "prior to *Janus*," the Union Defendants "were merely following the 40-

14   year-precedent of *Abood*" and its progeny, and the state laws premised on those

15   precedents that were in effect at the time the fair-share fees were collected.  *Yohn*,

16   Doc. No. 198, at 6.  Thus, the Union Defendants have a complete defense to

17   retrospective liability.

18       The Union Defendants were entitled, when entering into contractual

19   agreements with public employers that provided for fair-share fees, to rely upon

20   California state law and U.S. Supreme Court precedent that was then binding on

21   public employers, the Union Defendants, Plaintiffs, and every lower court, and that

22   was repeatedly reaffirmed in the decades after its issuance.  *See* n.2, *supra*.  As the

23   Supreme Court has emphasized, "state officials and those with whom they deal are

24   entitled to rely on a presumptively valid state statute, enacted in good faith and by no

25   means plainly unlawful."  *Lemon v. Kurtzman*, 411 U.S. 192, 209 (1973); *see also*

26   *Wyatt*, 504 U.S. at 174 (Kennedy, J., concurring) ("[A] private individual's reliance

27   on a statute, prior to a judicial determination of unconstitutionality, is considered

28

9

MPA ISO MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS, AND IN
THE ALTERNATIVE FOR SUMMARY JUDGMENT, Case No. 8:18-cv-00994-JLS-DFM

1  reasonable as a matter of law."); *Pinsky*, 79 F.3d at 313 ("[I]t is objectively

2  reasonable to act on the basis of a statute not yet held invalid.").

3      There is nothing unique about the fair-share fee context of this lawsuit that

4  would prevent application of the good faith defense.  To the contrary, after *Harris v.*

5  *Quinn*, 134 S.Ct. 2618 (2014), held that states could not require Medicaid-funded

6  homecare providers to pay fair-share fees as a condition of employment, every court

7  to consider whether homecare unions had to return fees collected pre-*Harris* applied

8  the good faith defense to hold that the unions that received those fees prior to *Harris*

9  were not subject to retrospective liability under §1983.  *See Jarvis v. Cuomo*, 660 F.

10  App'x 72, 75-76 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 1204 (2017) (holding that

11  union that had relied on state law in collecting fair-share fees from homecare

12  workers before *Harris* was not liable to pay refunds under §1983); *Winner v. Rauner*,

13  No. 15 CV 7213, 2016 WL 7374258, at *5-6 (N.D. Ill. Dec. 20, 2016) (same);

14  *Hoffman v. Inslee*, No. C14-200-MJP, 2016 WL 6126016, at *4 (W.D. Wash. Oct.

15  20, 2016) (same).  So too here.

16      The good faith defense to liability applies regardless of whether the Union

17  Defendants could have "predicted" the result in *Janus*—although they could not.

18  Courts have applied the good faith defense when private parties relied upon state

19  statutes that had not been invalidated by the courts, even where (unlike here) there

20  was no governing precedent holding the law constitutional, and, indeed, even where

21  the governing case law was not clear and even suggested that the legal authority

22  relied on by the defendants was in jeopardy.  *See, e.g.*, *Wyatt*, 994 F.2d at 1120-21

23  (good faith defense applied where defendant relied upon Mississippi replevin statute

24  that had not yet been invalidated but that had been placed in "legal jeopardy" by

25  prior Circuit opinion invalidating similar Georgia statute); *cf. Davis v. United States*,

26  564 U.S. 229, 241 (2011) (Alito, J.) (declining to apply the exclusionary rule to

27  evidence obtained through a search consistent with then-binding Circuit precedent

28  because police were entitled to rely on that precedent, even though its reasoning had

10

1    been questioned, and because the Court would not "penalize the officer for the

2    appellate judges' error") (alterations and citation omitted).

3        The Supreme Court has emphatically rejected the notion that anyone is

4    entitled to, much less *required to*, anticipate the overruling of its precedents, even

5    when those precedents have been criticized in later cases.  Rather, lower courts *must*

6    "follow the case which directly controls, leaving to [the Supreme] Court the

7    prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237

8    (1997).  While some Justices recently had expressed "misgivings about *Abood*,"

9    *Janus*, 138 S.Ct. at 2484, the Court had twice *declined* to overrule *Abood* in the four

10   years before the *Janus* decision, so *Abood* unquestionably remained the governing

11   law of the land, *see Harris*, 134 S.Ct. at 2638; *Friedrichs*, 136 S.Ct. 1083.

12       Exposing private parties to potentially catastrophic liability for relying on a

13   state law that is indisputably valid under then-binding Supreme Court precedent

14   solely because some Justices have expressed doubt about the precedent's reasoning

15   would be both unworkable and highly corrosive to the rule of law.  "[S]tatutory or

16   even judge-made rules of law are hard facts on which people must rely in making

17   decisions and in shaping their conduct." *Lemon*, 411 U.S. at 199.  If the good faith

18   defense depended upon the presence or absence of dicta criticizing a particular prior

19   precedent, however, private parties would no longer be able to rely upon the Court's

20   decisions, and would instead be required to predict the way that the Justices

21   (including sometimes, as in *Janus*, a new Justice who has never before opined on the

22   issue) might vote in a future case, thereby undermining the entire system of

23   precedent that forms the basis of our legal system.  *See, e.g.*, *Payne v. Tennessee*,

24   501 U.S. 808, 827 (1991) (explaining that this system "promotes the evenhanded,

25   predictable, and consistent development of legal principles, fosters reliance on

26   judicial decisions, and contributes to the actual and perceived integrity of the judicial

27   process").

28

11

MPA ISO MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS, AND IN
THE ALTERNATIVE FOR SUMMARY JUDGMENT, Case No. 8:18-cv-00994-JLS-DFM

1    In sum, the fair-share fees the Union Defendants received prior to the issuance

2  of *Janus* were collected in good faith pursuant to a California statute that was valid

3  under then-controlling and directly on-point United States Supreme Court, Ninth

4  Circuit, and California Supreme Court precedent.  After *Janus* was issued, the Union

5  Defendants continued to act in good faith, by immediately and unequivocally

6  complying with the new decision, including by refunding with interest any fair-share

7  fees received to cover the time period after the decision.  *See* pp. 3-5, *supra*; *see also*

8  *Yohn*, Doc. No. 198, at 6.  The Union Defendants cannot be held retrospectively

9  liable under §1983 for having faithfully followed the law.

### III.   Plaintiffs' State Common Law Claims Are Preempted by the Educational Employment Relations Act.

11    In addition to asserting a federal §1983 claim, Plaintiffs also seek to hold the

12  Union Defendants retrospectively liable under state common law for collecting fair-

13  share fees.  SAC ¶¶33-34. But any common law claims regarding fair-share fees are

14  preempted by California's Educational Employment Relations Act ("EERA"), Cal.

15  Gov't Code §§3540-3549.3, and any claims under EERA are subject to the exclusive

16  jurisdiction of the Public Employment Relations Board ("PERB") and must therefore

17  be dismissed.

18    EERA governs labor relations for public school district employees.  PERB has

19  *exclusive jurisdiction* to determine whether conduct of an employer or an employee

20  organization violates EERA and, if so, what the remedy shall be.  Cal. Gov't Code

21  §3541.5.  In order to protect PERB's exclusive jurisdiction, the California Supreme

22  Court has held that EERA broadly preempts state tort claims that allege conduct that

23  is even "arguably protected or prohibited under EERA."  *El Rancho Unified School*

24  *Dist. v. Nat'l Educ. Ass'n*, 33 Cal.3d 946, 960 (1983).  The Court explained that

25  "what matters is whether the underlying conduct on which the suit is based –

26  however described in the complaint – *may* fall within PERB's exclusive

27  jurisdiction."  *Id*. at 954 n.13 (emphasis added).

28

12

MPA ISO MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS, AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, Case No. 8:18-cv-00994-JLS-DFM

The alleged conduct of collecting fair-share fees pre-*Janus* was at least arguably protected by EERA because EERA expressly authorizes the collection of fair-share fees.  Cal. Gov't Code §§3543(a), 3546(a); *see also Cumero*, 49 Cal.3d at 587 ("EERA … contains provisions expressly … allowing … for compulsory nonmember service fees").  California courts have held that challenges to fair-share fees are subject to PERB's exclusive jurisdiction.  *See Leek v. Washington Unified School Dist.*, 124 Cal.App.3d 43, 51-54 (1981); *Link v. Antioch Unified School Dist.*, 142 Cal.App.3d 765, 767-69 (1983).  And the California Supreme Court has expressly agreed with the reasoning of those decisions.  *See San Jose Teachers Ass'n v. Superior Court*, 38 Cal.3d 839, 863 (1985) ("We agree with the Court of Appeal's view in those cases.").

Moreover, if Plaintiffs wish to argue that these specific EERA provisions should be treated as retroactively void in light of *Janus*, then the alleged conduct of collecting fair-share fees pre-*Janus* would at least arguably have been prohibited under EERA.  Indeed, the California Supreme Court explained in *Cumero* that PERB had interpreted the general provisions of EERA to preclude the collection of fair-share fees, except as "that general provision is modified … by the more particular provisions of [§§3440.1(i)(2) and 3546], authorizing organizational security arrangements."  *Cumero*, 49 Cal.3d at 584.  The "[i]nterpretation of the EERA falls squarely within PERB's legislatively designated field of expertise," *id.* at 587 (citation, internal quotation marks omitted), so how to interpret and apply EERA after *Janus* is initially and exclusively a question for PERB.

By adopting EERA, the California Legislature completely displaced any common law claims related to the collection of fair-share fees, and any state law claims regarding the collection of such fees must be presented to PERB, because "[t]he initial determination as to whether … charges or unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of [EERA], shall be a

13

MPA ISO MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS, AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, Case No. 8:18-cv-00994-JLS-DFM

matter within the exclusive jurisdiction of [PERB]."  Cal. Gov't Code §3541.5.  The Court must therefore dismiss Plaintiffs' state law claims as preempted.

**IV.    Plaintiffs' State Common Law Claims Also Are Precluded by California Government Code §1159.**

Even if this Court, rather than PERB, were the proper forum for addressing Plaintiffs' assertions of state law liability for the prior collection of fair-share fees (which it is not for the reasons previously explained), the California Legislature's recent adoption of Government Code §1159 confirms that there is no such liability under state law.  Section 1 of Senate Bill 846, which was signed by the Governor on September 14, 2018 and immediately effective, provides in relevant part:

Section 1159 is added to the Government Code, to read:

1159. (a) The Controller, a public employer, an employee organization, or any of their employees or agents, shall not be liable for, and shall have a complete defense to, any claims or actions under the law of this state for requiring, deducting, receiving, or retaining agency or fair share fees from public employees, and current or former public employees shall not have standing to pursue these claims or actions, if the fees were permitted at the time under the laws of this state then in force and paid, through payroll deduction or otherwise, prior to June 27, 2018.

(b) This section shall apply to claims and actions pending on its effective date, as well as to claims and actions filed on or after that date.[3]

Under this provision, the Union Defendants cannot be held liable under state law for the collection of pre-*Janus* fair-share fees.  They have a "complete defense" to Plaintiffs' state law claims for refunds, regardless of the cause of action asserted; and Plaintiffs lack "standing to pursue the[ir] claims …."  Cal. Gov't Code §1159(a).

---

[3]  The full text of California Government Code §1159 is appended to this brief. A copy of SB 846 is attached as Kronland Decl., Exh. A.  Because SB 846 was a budget trailer bill, its "effective date" was the date it was signed by the Governor. *See* SB 846, Section 10.

14

MPA ISO MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS, AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, Case No. 8:18-cv-00994-JLS-DFM

1    As such, all of Plaintiffs' state law claims are precluded by SB 846 as a matter of
2    law.  And this result makes perfect sense, because the California Legislature had
3    previously expressly authorized fair-share fees by statute, thereby displacing any
4    "law of this state," including the common law theories on which Plaintiffs now
5    mistakenly seek to proceed.

### V.   In the Alternative, All of Plaintiff Babb's Claims, and Defendant Schmus's Section 1983 Claim, Should Be Dismissed as Untimely

Finally, and in the alternative, all of Plaintiffs Babb's claims, and one of Plaintiff Schmus's claims, should be dismissed as untimely.  Plaintiffs' §1983 claim has a two-year statute of limitations, *see, e.g., Butler v. Nat'l Community Renaissance of California*, 766 F.3d 1191, 1198 (9th Cir. 2014), and their state law claims have a three-year statute of limitations, *see* CCP § 338(c)(1).  The Complaint alleges that Plaintiff Babb ceased her employment in the California public schools more than three years before this action was originally filed, June 5, 2018.  *See* SAC ¶14.  As such, all of Plaintiff Babb's claims are time-barred.  Similarly, Plaintiff Schmus is alleged to have ceased his employment in the public schools in 2015, *see id*., ¶19, more than two years before this action was filed, so at the least his §1983 claim is time-barred.

### CONCLUSION

For the reasons discussed above, the Court should dismiss Plaintiffs' claims for prospective relief for lack of jurisdiction and dismiss Plaintiffs' claims for retrospective monetary relief with prejudice.

15

MPA ISO MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS, AND IN
THE ALTERNATIVE FOR SUMMARY JUDGMENT, Case No. 8:18-cv-00994-JLS-DFM

1

Dated:  November 15, 2018                 Respectfully submitted,

2

3                                                    ALTSHULER BERZON LLP
                                                     Scott A. Kronland
4                                                    Jeffrey B. Demain
                                                     Rebecca Moryl Lee
5

6                                                    By:  __/s/ Scott A. Kronland____
                                                              Scott A. Kronland
7
                                                     Attorneys for Union Defendants
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA ISO MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS, AND IN
THE ALTERNATIVE FOR SUMMARY JUDGMENT, Case No. 8:18-cv-00994-JLS-DFM

# **ATTACHMENT**

**California Government Code Section 1159**

(a) The Controller, a public employer, an employee organization, or any of their employees or agents, shall not be liable for, and shall have a complete defense to, any claims or actions under the law of this state for requiring, deducting, receiving, or retaining agency or fair share fees from public employees, and current or former public employees shall not have standing to pursue these claims or actions, if the fees were permitted at the time under the laws of this state then in force and paid, through payroll deduction or otherwise, prior to June 27, 2018.

(b) This section shall apply to claims and actions pending on its effective date, as well as to claims and actions filed on or after that date.

(c) The enactment of this section shall not be interpreted to create the inference that any relief made unavailable by this section would otherwise be available.

(d) For purposes of this section:

(1) "Employee organization" means any organization that functioned as an exclusive collective bargaining representative for public employees under any statute, ordinance, regulation, or other state or local law, and any labor organization with which it was affiliated.

(2) "Public employer" means any public employer, including, but not limited to, the state, the Regents of the University of California, the Trustees of the California State University, the California State University, the Judicial Council, a trial court, a city, a county, a city and county, a school district, a community college district, a transit district, any public authority, public agency, or any other political subdivision or public corporation, or any other entity considered a public employer for purposes of the labor relations statutes of California.

(e) The Legislature finds and declares:

(1) Application of this section to pending claims and actions clarifies existing state law rather than changes it. Public employees who paid agency or fair share fees as a condition of public employment in accordance with state law and Supreme Court precedent prior to June 27, 2018, had no legitimate expectation of receiving that money under any available cause of action. Public employers and employee organizations who relied on, and abided by, state law and Supreme Court precedent in deducting and accepting those fees were not liable to refund them. Agency or fair share fees paid for collective bargaining representation that employee organizations were obligated by state law to provide to public employees. Application of this

section to pending claims will preserve, rather than interfere with, important reliance interests.

(2) This section is necessary to provide certainty to public employers and employee organizations that relied on state law, and to avoid disruption of public employee labor relations, after the Supreme Court's decision in Janus v. American Federation of State, County, and Mun. Employees, Council 31 (2018) 138 S.Ct. 2448.


(Added by Stats. 2018, Ch. 405, Sec. 1. (SB 846) Effective September 14, 2018.)