Jᴏɴᴀᴛʜᴀɴ F. Mɪᴛᴄʜᴇʟʟ*
Texas Bar No. 24075463
Mitchell Law PLLC
106 East Sixth Street, Suite 900
Austin, Texas 78701
(512) 686-3940

* admitted *pro hac vice*

Cʜʀɪsᴛᴏᴘʜᴇʀ Hᴇʟʟᴍɪᴄʜ
California Bar No. 224169
Hellmich Law Group, PC
5753-G E. Santa Ana Canyon Rd. #512
Anaheim Hills, California 92807
(949) 287-5708

*Counsel for Plaintiffs and Proposed Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| **Georgia Babb**, et al., <br><br> Plaintiffs, <br><br> v. <br><br> **California Teachers Association**, et al., <br><br> Defendants. | Case No. 8:18-cv-00994-JLS-DFM <br><br> **Response to Union Defendants' Motion to Dismiss and for Judgment on the Pleadings and in the Alternative for Summary Judgment** <br><br> Hearing Date: January 18, 2019 |

# TABLE OF CONTENTS

Table of contents.................................................................................. i

Table of authorities ............................................................................ ii

I.  The Court cannot dismiss the refund claims at this stage of the
    litigation based on the supposed "good-faith defense"....................... 2

  A. *Wyatt v. Cole* forbids a good-faith defense when the most
     analogous common-law tort rejects any consideration of the
     tortfeasor's state of mind ................................................................ 3

  B. If a "good faith" defense exists, it can extend only to
     individual defendants and not to entities such as labor unions ....... 9

  C. The union's appeal to "principles of equality and fairness"
     does not support its good-faith defense ........................................ 11

  D. Even if one assumes that the union can assert a good-faith
     defense, the union cannot establish good faith unless it
     presents evidence of its officers' subjective state of mind ............. 14

  E. The union's purported reliance on *Abood* and California's
     agency-shop statutes is incapable of establishing a "good
     faith" defense because the Supreme Court had issued
     repeated warnings that public-sector agency shops were
     constitutionally dubious ............................................................... 16

  F. The union has not proven that it complied with pre-*Janus*
     case law ....................................................................................... 20

  G. The union's good-faith defense does not confer immunity
     from the plaintiffs' claims for equitable monetary relief such
     as restitution and unjust enrichment ........................................... 22

II. The plaintiffs are entitled to a refund under state tort law, which
    has no good-faith defense ................................................................. 23

III.The union's change of conduct in response to a Supreme Court
    ruling involving other parties does not moot the plaintiffs' claims
    for prospective relief ........................................................................ 24

Certificate of service.......................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176 (9th Cir. 2010) ....... 24

*Bank Markazi v. Peterson*, 136 S. Ct. 1310 (2016) ......................................... 19

*Brown v. Bathke*, 566 F.2d 588 (8th Cir. 1977) .............................................. 22

*Camreta v. Greene*, 563 U.S. 692 (2011) ......................................................... 8

*Chicago, Indianapolis, & Louisville Ry. Co. v. Hackett*,
    228 U.S. 559 (1913) ................................................................................... 23

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) ........................... 12

*Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008) ......................... 5, 6

*Danielson v. Inslee*, No. 3:18-cv-05206-RJB (W.D. Wash.) ............ 7, 11, 16, 21

*El Rancho Unified School Dist. v. Nat'l Educ. Ass'n*,
    33 Cal. 3d 946 (1983) ............................................................................... 24

*Franklin v. Fox*, 2001 WL 114438  (N.D. Cal.) ........................................ 11, 16

*Friedrichs v. California Teachers Association*, 136 S. Ct. 1083 (2016) ............. 17

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ............................................ 7

*Gomez v. Toledo*, 446 U.S. 635 (1980) ........................................................... 21

*Harris v. Quinn*, 134 S. Ct. 2618 (2014) .................................................... 7, 17

*Hoffman v. Inslee*, No. 14-CV-200 (MJP), 2016 WL 6126016 (W.D.
    Wash. Oct. 20, 2016) ................................................................................. 8

*Jarvis v. Cuomo*, 660 F. App'x 72 (2d Cir. 2016) ............................................. 7

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
    20 F.3d 1250 (3d Cir. 1994) ..................................................................... 14

*Knox v. Service Employees Int'l Union, Local 1000*, 567 U.S. 311 (2012) ........ 17

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994) ...................................... 19

*Lemon v. Kurtzman*, 411 U.S. 192 (1973) ........................................................ 9

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ........................................... 2

*Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) ..................................... 12

*Morissette v. United States*, 342 U.S. 246 (1952) ............................................. 4

*Norton v. Shelby County*, 118 U.S. 425 (1886) ............................................... 23

*Owen v. City of Independence*, 445 U.S. 622 (1980) .................................. 12, 13

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ...................................... 12

*Pinsky v. Duncan*, 79 F.3d 306 (2d Cir. 1996) .................................................. 5

*Poggi v. Scott*, 139 P. 815 (Cal. 1914) ............................................................ 23

*Richardson v. McKnight*, 521 U.S. 399 (1997) ................................................. 9

*Riffey v. Rauner,*
    No. 16-3487, 2018 WL 6377722, at *1 (7th Cir. Dec. 6, 2018) .................. 8

*Robinson v. City of San Bernardino Police Dep't,*
    992 F. Supp. 1198 (C.D. Cal. 1998) .........................................................14

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) ................................................ 20

*United States v. Monsanto Co.*, 858 F.2d 160 (4th Cir. 1988).........................19

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976) ................................19

*Winner v. Rauner,*
    No. 15 CV 7213, 2016 WL 7374258 (N.D. Ill. Dec. 20, 2016).................... 8

*Wood v. Strickland,* 420 U.S. 308 (1975) .................................................. 2, 22

*Wyatt v. Cole*, 504 U.S. 158 (1992).......................................................... passim

*Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993).....................................5, 14

**Other Authorities**

Mark R. Brown, *Correlating Municipal Liability and Official Immunity
    Under Section 1983*, 1989 U. Ill. L. Rev. 625 .............................................13

Noah Feldman, *Cosmopolitan Law?*, 116 Yale L.J. 1022 (2007) ....................19

**Rules**

Fed. R. Civ. P. 56(d) ....................................................................................15

Fed. R. Civ. P. 56(d)–(e) ...............................................................................21

Fed. R. Civ. P. 56(e) ....................................................................................14

1

1   The union's purported "good faith" defense fails for seven independent
2   reasons.

3   First. The union's "good faith" defense is foreclosed by *Wyatt v. Cole*, 504
4   U.S. 158, 161 (1992), which forbids courts to recognize non-textual immunity
5   defenses when the common-law tort most analogous to the defendant's con-
6   stitutional violations—in this case, the tort of conversion—imposed strict lia-
7   bility and was unconcerned with the defendant's "good faith" or state of mind.

8   Second. The defense of qualified immunity extends only to individual de-
9   fendants and to not entities such as municipal corporations or labor unions,
10  and the union presents no argument or reason why its proposed "good faith"
11  defense should have a wider scope than the qualified immunity available to
12  government defendants.

13  Third. The union's appeal to "principles of equality and fairness" does
14  not support its "good faith" defense because the union was unjustly enriched
15  by the unconstitutional collection of agency fees, and there is nothing "unfair"
16  about restoring the money that the union had unconstitutionally seized to its
17  rightful owners.

18  Fourth. The union has presented no evidence of its officers' subjective
19  state of mind, which is needed to establish a "good faith defense."

20  Fifth. The union's alleged reliance on *Abood v. Detroit Board of Education*,
21  431 U.S. 209 (1977), and California agency-shop laws cannot establish a "good
22  faith" defense because the Supreme Court had repeatedly warned public-em-
23  ployee unions that they should not rely on *Abood*.

24  Sixth. The union cannot establish a good-faith defense unless it proves that
25  it complied with *Abood* and pre-*Janus* pronouncements that prohibited unions
26  from charging non-members for political and ideological expenditures, and the
27  union has produced no evidence of this.

1     Seventh. The defenses of qualified immunity and "good faith" provide
2 immunity only from money damages, and are inapplicable to claims for equi-
3 table relief such as backpay, restitution, and unjust enrichment, which the
4 plaintiffs are asserting here. *See Wood v. Strickland,* 420 U.S. 308, 315 n.6
5 (1975), *overruled in part on other grounds, Harlow v. Fitzgerald,* 457 U.S. 800
6 (1982) ("[I]mmunity from damages does not ordinarily bar equitable relief as
7 well.").

## I. THE COURT CANNOT DISMISS THE REFUND CLAIMS AT THIS STAGE OF THE LITIGATION BASED ON THE SUPPOSED "GOOD-FAITH DEFENSE"

8     Section 1983 imposes liability on every person who, while acting under
9 color of state law, "subjects, or causes to be subjected, any citizen of the
10 United States or other person within the jurisdiction thereof to the depriva-
11 tion of any rights, privileges, or immunities secured by the Constitution and
12 laws." 42 U.S.C. § 1983. The union never denies that *Janus* is retroactive; that
13 it violated the plaintiffs' constitutional rights; that it acted under color of state
14 law when doing so; and that it cannot assert a qualified-immunity defense. *See*
15 ECF No. 63-1 at 6–12. And it is hard to see how any of this could be contested
16 given that the Supreme Court has held that its substantive constitutional pro-
17 nouncements are always retroactive;[1] that public-sector agency shops violate
18 the constitutional rights of public employees;[2] that private parties act "under
19 color of state law" when enforcing an unconstitutional state statute;[3] and that

---

1.   *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 96 (1993) ("[A] rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law.").

2.   *See Janus*, 138 S. Ct. 2448.

3.   *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).

1    qualified-immunity defenses are unavailable to private entities such as labor

2    unions.[4] That makes the unions liable for a refund under the unambiguous text

3    of 42 U.S.C. § 1983, which imposes liability on any person who deprives an-

4    other of his constitutional rights while acting under color of state law.[5]

5    The union thinks it can escape the text of section 1983 by invoking a

6    "good-faith defense" that appears nowhere in the statute and that has never

7    been recognized by the Supreme Court. *See Wyatt v. Cole*, 504 U.S. 158, 168–

8    69 (1992) (refusing to resolve whether private defendants can assert a "good

9    faith" defense under section 1983). The union's efforts to assert a "good faith"

10   defense at this stage of the proceedings fail for seven separate and independent

11   reasons.

### A.   *Wyatt v. Cole* Forbids A Good-Faith Defense When The Most Analogous Common-Law Tort Rejects Any Consideration Of The Tortfeasor's State Of Mind

12   The most serious problem for the union's "good faith" defense is the Su-

13   preme Court's opinion in *Wyatt v. Cole*, which carefully explains the circum-

14   stances in which the courts may recognize non-textual immunity defenses to

15   section 1983. Whenever a section 1983 defendant asserts a new immunity de-

16   fense such as "good faith," *Wyatt* compels courts to look to the most analogous

---

4.   *See Wyatt v. Cole*, 504 U.S. 158, 167 (1992) ("[Q]ualified immunity for public officials [is] not applicable to private parties.").

5.   42 U.S.C. § 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the ju-risdiction thereof to the deprivation of any rights, privileges, or immuni-ties secured by the Constitution and laws, shall be liable to the party in-jured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

1  common-law tort, and it allows courts to recognize a defense only if that tort

2  would have conferred similar immunities when section 1983 was enacted:

> Section 1983 creates a species of tort liability that on its face admits of no immunities. Nonetheless, we have accorded certain government officials either absolute or qualified immunity from suit if the tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine. If parties seeking immunity were shielded from tort liability when Congress enacted the Civil Rights Act of 1871—§ 1 of which is codified at 42 U.S.C. § 1983—we infer from legislative silence that Congress did not intend to abrogate such immunities when it imposed liability for actions taken under color of state law. . . . In determining whether there was an immunity at common law that Congress intended to incorporate in the Civil Rights Act, we look to the most closely analogous torts.

3  *Wyatt v. Cole*, 504 U.S. 158, 164 (1992) (citations and internal quotation marks

4  omitted); *see also id.* at 170 (1992) (Kennedy, J., concurring) ("Our immunity

5  doctrine is rooted in historical analogy, based on the existence of common-law

6  rules in 1871, rather than in freewheeling policy choices." (citation and internal

7  quotation marks omitted)); *id.* at 171–72 (1992) (Kennedy, J., concurring)

8  ("[W]e may not transform what existed at common law based on our notions

9  of policy or efficiency.").

10      The union does not acknowledge or address these passages in *Wyatt*—and

11  for good reason. The common-law tort most analogous to the union's uncon-

12  stitutional confiscation of wages is conversion, and conversion is a strict-lia-

13  bility tort that is unconcerned with whether the defendant acted in good faith.

14  *See Morissette v. United States*, 342 U.S. 246, 253–54 (1952) ("In the civil tort

15  [of conversion], except for recovery of exemplary damages, the defendant's

16  knowledge, intent, motive, mistake, and good faith are generally irrelevant. If

one takes property which turns out to belong to another, his innocent intent will not shield him from making restitution or indemnity . . .”). When someone accidentally walks off with another's property, or takes another's property while believing in good faith that it belongs to him, he remains liable in tort to return that property or pay damages for its value. There is no "good faith" defense to the tort of conversion. So unless the union can show that the most analogous tort is something other than conversion, the union cannot assert a good-faith defense consistent with *Wyatt*. The union does not even attempt to make this showing, and that alone is sufficient to defeat its good-faith defense.

Most of the lower-court decisions on which the union relies are readily distinguishable because they did not involve situations in which the most analogous common-law tort imposed strict liability.[6] The only binding authority that the union cites is *Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008), but that case involved a deprivation of procedural due-process rights rather than an unconstitutional confiscation of wages under the First Amendment. And the Supreme Court specifically held in *Wyatt v. Cole* that a failure to provide the necessary procedural protections before depriving an individual

---

6.   In *Pinsky v. Duncan*, 79 F.3d 306, 312 (2d Cir. 1996), and *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993), for example, the courts recognized that malicious prosecution was the most analogous common-law tort — a tort that required the plaintiff to prove that the defendant had acted with malice. *See Pinsky*, 79 F.3d at 312 ("Doehr's claim therefore falls within the definition of malicious prosecution. . . . We think that malicious prosecution is the most closely analogous tort"); *Wyatt*, 994 F.2d at 1118 ("The [Supreme] Court in *Wyatt* identified malicious prosecution and abuse of process as the common-law causes of action most analogous to Wyatt's claim under *Lugar* and therefore focused its inquiry on the elements of these torts."). These cases are no help at all to defendants who are attempting to assert a "good-faith defense" when the most analogous common-law tort is conversion or some other strict-liability tort.

1   of liberty or property is most analogous to malicious prosecution or abuse of

2   process—torts which require a showing of malice or an absence of probable

3   cause. *See Wyatt*, 504 U.S. at 164 ("[W]e look to the most closely analogous

4   torts—in this case, malicious prosecution and abuse of process."). Nothing in

5   *Clement* holds or implies that a good-faith defense is available when the most

6   analogous common-law tort is conversion or some strict-liability cause of ac-

7   tion, and *Clement* cannot be interpreted to confer a good-faith defense in those

8   situations without contradicting the Supreme Court's opinion in *Wyatt*.

9      The analysis in *Clement* was exceedingly cursory—the court did not even

10  attempt to explain the legal authority for a good-faith defense[7] and it did not

11  describe the contours of this supposed defense. From this silence, the union

12  wants the Court to infer that *Clement* enshrined the broadest possible concep-

13  tion of the "good-faith defense" as the law of the Ninth Circuit—a defense at

14  least as extensive as the qualified immunity that government officials enjoy,

15  and a defense that extends *beyond* qualified immunity by protecting not only

16  individuals but also *entities* such as labor unions. *See* ECF No. 63-1 at 8. But

17  *Clement* made clear that its holding was limited to the facts of the case, and it

18  expressed no view on whether and to what extent a "good-faith defense"

19  might be allowed in other situations. *See Clement*, 518 F.3d at 1097 ("The facts

20  of this case justify allowing Monterey Tow Service to assert such a good faith

21  defense."). And it is manifestly improper to interpret a lower-court opinion in

---

7.   The *Clement* Court observed that *Wyatt* and *Robinson* had "held open the possibility that private defendants may assert a "good faith" defense to a section 1983 claim," 516 F.3d at 1097, and then proceeded to announce that "[t]he facts of this case justify allowing Monterey Tow Service to assert such a good faith defense," *id.* without ever providing a legal justification for the existence of this defense.

1    a manner that authorizes other courts to depart from Supreme Court prece-

2    dent. *Clement* should have discussed the most analogous tort before allowing

3    the defendant to assert a good-faith defense, but its failure to do so does not

4    license a district court to emulate the Ninth Circuit's disregard of the Supreme

5    Court's instructions. *See Wyatt*, 504 U.S. at 164 ("In determining whether

6    there was an immunity at common law that Congress intended to incorporate

7    in the Civil Rights Act, we look to the most closely analogous torts.").[8]

8        The unpublished court rulings that allowed unions to assert "good faith"

9    defenses in the aftermath of *Harris v. Quinn*, 134 S. Ct. 2618 (2014), are in-

10   compatible with *Wyatt*'s most-analogous-common-law-tort rule and cannot be

11   followed. *See* ECF No. 63-1 at 10 (citing *Jarvis v. Cuomo*, 660 F. App'x 72, 75–

12   76 (2d Cir. 2016); *Winner v. Rauner*, No. 15 CV 7213, 2016 WL 7374258, at

---

8.   The district court in *Danielson v. Inslee* tried to get around *Wyatt* by deny-
     ing that the most analogous common-law tort is conversion, arguing in-
     stead that "[a] dignitary tort, such as defamation, or tortious interference
     with a contract or business expectancy, more closely resembles the First
     Amendment claim." *Danielson v. Inslee*, No. 3:18-cv-05206-RJB (W.D.
     Wash.), ECF No. 50 at 5–6. But defamation was a strict-liability tort at
     common law, just as conversion was. *See Gertz v. Robert Welch, Inc.*, 418
     U.S. 323, 342, 346 (1974) (acknowledging "the common-law rule of strict
     liability for libel and slander" and "the common law of strict liability for
     defamatory error"). And in all events, *Danielson*'s contention that the
     union's unconstitutional confiscation of wages is most analogous to def-
     amation or tortious interference with a contract or business expectancy
     is absurd. The agency shop inflicted no reputational harm on anyone, and
     it did not cause anyone to breach a contractual obligation. The union took
     the plaintiffs' money against their will and without their consent—that is
     a quintessential conversion claim. And under *Janus*, *any* seizure of the
     plaintiffs' property by the union violates the First Amendment, regard-
     less of whether the money is used for "political and ideological activities
     that Plaintiffs oppose." *Danielson v. Inslee*, No. 3:18-cv-05206-RJB (W.D.
     Wash.), ECF No. 50 at 5.

1   **5–6 (N.D. Ill. Dec. 20, 2016); *Hoffman v. Inslee*, No. 14-CV-200 (MJP), 2016

2   WL 6126016 (W.D. Wash. Oct. 20, 2016)). None of those opinions attempts

3   to explain how the most analogous common-law tort would allow for a good-

4   faith defense, and none of them even acknowledges that *Wyatt* requires courts

5   to consider the most analogous common-law tort before recognizing a non-

6   textual immunity under section 1983. Unpublished opinions from other cir-

7   cuits and district courts have no precedential force and cannot be followed un-

8   less this Court is independently persuaded of their reasoning. *See Camreta v.*

9   *Greene*, 563 U.S. 692, 709 n.7 (2011). The Supreme Court's *Wyatt* opinion, by

10  contrast, is binding precedent — and it forbids courts to recognize a "good

11  faith" defense when the most analogous common-law tort imposed strict lia-

12  bility.

13      The union is also wrong to assert that every post-*Harris* court has held that

14  public-employee unions are immune from refund lawsuits. In *Riffey v. Rauner*,

15  No. 16-3487, 2018 WL 6377722, at *1 (7th Cir. Dec. 6, 2018), the Seventh Cir-

16  cuit denied class certification in a refund lawsuit, but nevertheless announced

17  that it "agreed with the putative class that no one could be compelled to pay

18  fair-share fees, pursuant to the Supreme Court's decision in *Harris v. Quinn*,

19  ––– U.S. –––– (2014), *a*nd that any such objector would be entitled to have his

20  or her payments refunded." *Id.* at *1. *Riffey* came out after the union filed its

21  brief on November 15, 2018, and *Riffey* does not discuss the CTA's arguments

22  for a "good faith" defense. But at least one appellate court has declared that

23  agency-fee payers are entitled to refunds in the wake of *Harris*, consistent with

24  the Supreme Court's holdings on the retroactivity of its constitutional pro-

25  nouncements and its refusal to extend qualified immunity to private entities

26  such as labor unions.

1    Finally, the union misrepresents the opinion in *Wyatt* when it asserts that

2    "[e]very member of the *Wyatt* Court concluded that *some* defense to monetary

3    liability, whether qualified immunity or a good faith defense, is available to pri-

4    vate defendants." ECF No. 63-1 at 7. The *Wyatt* majority opinion made clear

5    that it was refusing to resolve whether a "good faith" defense exists under sec-

6    tion 1983:

> [W]e do not foreclose the possibility that private defendants faced
> with § 1983 liability under *Lugar v. Edmondson Oil Co.,* 457 U.S.
> 922 (1982), could be entitled to an affirmative defense based on
> good faith and/or probable cause or that § 1983 suits against pri-
> vate, rather than governmental, parties could require plaintiffs to
> carry additional burdens. *Because those issues are not fairly before
> us, however, we leave them for another day.*

7    *Wyatt v. Cole*, 504 U.S. 158, 169 (1992) (emphasis added); *see also Richardson v.*

8    *McKnight*, 521 U.S. 399, 414 (1997) ("*Wyatt* explicitly stated that it did not de-

9    cide whether or not the private defendants before it might assert, not immun-

10   ity, but a special 'good-faith' defense. . . . Like the Court in *Wyatt,* . . . we do

11   not express a view on this . . . question."). That is a far cry from an "acknowl-

12   edgement of the availability of a good faith defense." ECF No. 63-1 at 7.[9]

## B.   If A "Good Faith" Defense Exists, It Can Extend Only To Individual Defendants And Not To Entities Such As Labor Unions

13   Even if the union could persuade this Court to ignore *Wyatt*'s most-analo-

14   gous-tort rule, there is a second insurmountable problem with the union's at-

15   tempted "good faith" defense: The qualified-immunity doctrine is available

---

9.   The union also misrepresents *Lemon v. Kurtzman*, 411 U.S. 192 (1973),
     by quoting from a *plurality* opinion—while omitting a parenthetical that
     would inform the reader that the opinion received only four votes and
     does not qualify as law. *See* ECF No. 63-1 at 9.

1  only to *individuals*, while *entities* such as counties and municipal corporations

2  are categorically ineligible for the defense. That is because qualified immunity

3  is concerned with protecting individual officers from the threat of *personal*

4  monetary liability for carrying out their duties—a concern that is not present

5  when liability is imposed on entities such as municipal corporations or labor

6  unions. As the Supreme Court has explained:

> At the heart of this justification for a qualified immunity for the individual official is the concern that the threat of *personal* monetary liability will introduce an unwarranted and unconscionable consideration into the decisionmaking process, thus paralyzing the governing official's decisiveness and distorting his judgment on matters of public policy. The inhibiting effect is significantly reduced, if not eliminated, however, when the threat of personal liability is removed.

7  *Owen*, 445 U.S. at 655–56.

8      The union insists that "principles of equality and fairness" require private

9  parties to enjoy the same immunities available to "their government counter-

10  parts." ECF No. 63-1 at 8 (quoting *Wyatt*, 504 U.S. at 168). But even if one

11  were to accept this dubious contention,[10] it can at most support a defense that

12  extends only to the union's *individual* officers and employees; the union itself

13  should remain liable on the same terms as a county or municipal entity. *See*

14  *Owen*, 445 U.S. at 655–56.

15      And if union wants to insist on a "good faith" defense that shields private

16  entities on the same terms as private individuals, then the union must explain

---

10.  *See supra* Part I.A (explaining how *Wyatt v. Cole*, 504 U.S. 158 (1992), forbids courts to extend a "good faith" defense under 42 U.S.C. § 1983 when the most analogous common law tort imposed strict liability, even if an individual government official could assert qualified immunity for committing the same constitutional violation).

1   why this proposed "good faith" defense should extend more broadly than the

2   qualified immunity available to government defendants—and it must further

3   explain how this proposal is consistent with the "principles of equality and

4   fairness" that it touts throughout its brief. *See* ECF 63-1 at 8.

### C. The Union's Appeal To "Principles Of Equality And Fairness" Does Not Support Its Good-Faith Defense

5   The union protests that it would be "unfair" to require public-employee

6   unions to return money that they seized in violation of the Constitution be-

7   cause the state officers who authorized these agency shops are shielded by

8   qualified immunity — and it insists that "principles of equality and fairness"

9   require the union to enjoy immunities identical to those available to its "gov-

10  ernment counterparts." ECF No. 63-1 at 8 (quoting *Franklin v. Fox*, 2001 WL

11  114438, *5 (N.D. Cal.), and *Wyatt*, 504 U.S. at 168).[11] There are many prob-

12  lems with the union's equality-and-fairness argument.

13  The first problem is that the union was unjustly enriched by the unconsti-

14  tutional agency-shop arrangements that existed before *Janus*. *See Janus*, 138

15  S. Ct. at 2486 (describing "the considerable windfall that unions have received

16  under *Abood* for the past 41 years."); *id.* (describing the "billions of dollars

17  have been taken from nonmembers and transferred to public-sector unions in

18  violation of the First Amendment."). There is nothing "unfair" or "inequita-

19  ble" about requiring the union—which *took and kept* the money that was seized

---

11.   In *Danielson v. Inslee*, the district court made a similar appeal to "equity and fairness" when allowing a union to assert a "good faith" defense in a *Janus* refund lawsuit. *See Danielson v. Inslee*, No. 3:18-cv-05206-RJB (W.D. Wash.), ECF No. 50 at 4 ("Although the precise contours of the defense have not been clearly defined by the Supreme Court, circuit courts, including the Ninth Circuit, have acknowledged its general contours of equity and fairness.").

1   in violation of the plaintiffs' constitutional rights—to return those funds,
2   while simultaneously allowing the state officials who merely authorized these
3   unconstitutional agency shops to assert immunity from damages. The plain-
4   tiffs are seeking only a refund of the agency fees that the union confiscated;
5   they are not requesting punitive damages or other monetary relief for which
6   the union and state officials should be subjected to liability on equal terms.[12]

7       The second problem is that section 1983 will often confer different types
8   of immunities upon similarly situated co-defendants. Municipal corporations,
9   for example, are forbidden to assert qualified immunity under section 1983,
10  but they can escape liability if the plaintiff is unable to identify a municipal
11  "policy" that caused the constitutional injury. *Compare Owen v. City of Inde-*
12  *pendence,* 445 U.S. 622 (1980), *with Monell v. Dep't of Social Servs.*, 436 U.S.
13  658 (1978). Municipal employees, on the other hand, may assert qualified im-
14  munity but have no defense under *Monell*'s municipal-policy doctrine. This
15  regime often produces cases in which a municipality faces liability under sec-
16  tion 1983 but not its employee, and vice versa. *See* Mark R. Brown, *Correlating*
17  *Municipal Liability and Official Immunity Under Section 1983*, 1989 U. Ill. L.

---

12. The union's claim that "the purpose of §1983" it to deter state actors from violating federally protected rights is false. *See* ECF No. 63-1 at 8–9. The Supreme Court has repeatedly recognized that the compensation of those who have suffered deprivations of their federally protected rights is an equally important purpose of section 1983. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983."); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267–68 (1981) ("The Court . . . never has suggested that punishment is as prominent a purpose under the statute as are compensation and deterrence.").

Rev. 625, 631 ("Usually, where the official is not immune (and thus is potentially liable), the city will not be held accountable. Conversely, the city will be financially responsible where the official is immune (and not liable)."). Yet no court has ever held that "principles of equality and fairness" demand that municipalities be allowed to assert qualified immunity, or that municipal employees be allowed to assert an absence-of-municipal-policy defense. The union provides no reason for why the "principles of equality and fairness" should command immunities of equal scope for public-sector unions and state officials, but not for municipalities and their own employees.

The third problem with the union's "fairness" argument is that many public employees work for counties and municipal corporations — and those public employers are *not* permitted to assert qualified immunity under 42 U.S.C. § 1983. *See Owen v. City of Independence,* 445 U.S. 622 (1980). So any county or municipal employer that operated an agency shop will have no immunity defense in a post-*Janus* refund lawsuit, and the union's appeal to "principles of equality and fairness" would *require* union liability in these situations. Yet this regime opens up equality-and-fairness problems of its own. Why is it "fair" or "equitable" to shield *most* public-sector unions from refund lawsuits, while leaving unions that represent county or municipal employees liable to return the pre-*Janus* agency fees they collected?

Finally, the union's appeal to equality and fairness runs headlong into *Wyatt*, which requires non-textual immunity defenses to section 1983 to be rooted in history and not policy considerations. *See Wyatt*, 504 U.S. at 164 ("In determining whether there was an immunity at common law that Congress intended to incorporate in the Civil Rights Act, we look to the most closely analogous torts — in this case, malicious prosecution and abuse of process."); *id.* at 170

1  (1992) (Kennedy, J., concurring) ("Our immunity doctrine is rooted in histor-

2  ical analogy, based on the existence of common-law rules in 1871, rather than

3  in freewheeling policy choices." (citation and internal quotation marks omit-

4  ted)); *id.* at 171–72 (1992) (Kennedy, J., concurring) ("[W]e may not trans-

5  form what existed at common law based on our notions of policy or effi-

6  ciency."). Courts cannot make up defenses to section 1983 based on notions of

7  "equality and fairness"; any defense must be grounded in historical analysis.

### D. Even If One Assumes That The Union Can Assert A Good-Faith Defense, The Union Cannot Establish Good Faith Unless It Presents Evidence Of Its Officers' Subjective State Of Mind

8  There is yet another reason why they union cannot prevail on a good-faith

9  defense at this stage of the proceedings: "Good faith" is a subjective defense

10  that requires evidence of a defendant's state of mind. *See, e.g.*, *Wyatt v. Cole*,

11  994 F.2d 1113, 1120 (5th Cir. 1993) ("[W]e think that private defendants, at

12  least those invoking ex parte prejudgment statutes, should not be held liable

13  under § 1983 absent a showing of malice and evidence that they either knew or

14  should have known of the statute's constitutional infirmity."); *Jordan v. Fox,*

15  *Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1277 (3d Cir. 1994) ("'[G]ood

16  faith' gives state actors a defense that depends on their subjective state of

17  mind, rather than the more demanding objective standard of reasonable belief

18  that governs qualified immunity."); *Robinson v. City of San Bernardino Police*

19  *Dep't*, 992 F. Supp. 1198, 1207 (C.D. Cal. 1998) ("A good faith defense, unlike

20  qualified immunity, depends on the subjective state of mind of the private per-

21  son."). The union's motion for summary judgment presents no evidence what-

22  soever regarding the subjective beliefs of its officers. That alone requires the

23  Court to deny the motion for summary judgment. *See* Fed. R. Civ. P. 56(e)

1    (summary judgment improper if a party "fails to properly support an assertion

2    of fact."). "Good faith" is an affirmative defense on which the union bears the

3    burden of proof, and the union must prove that it sincerely believed or ex-

4    pected that *Janus* would uphold public-sector agency shops.[13]

5        The motion for summary judgment must also be denied because the plain-

6    tiffs have not had an opportunity to take discovery on the union's good faith.

7    *See* Fed. R. Civ. P. 56(d); *see also* Declaration of Jonathan F. Mitchell (attached

8    as Exhibit 1). If discovery reveals that the union's officers expected *Janus* to

9    overrule *Abood* and declare public-sector agency shops unconstitutional, then

10   the union's determination to prolong these unconstitutional arrangements

11   would not reflect a good-faith effort to comply with its constitutional obliga-

12   tions. It would instead reveal a determination to squeeze every last dollar from

13   the plaintiffs and their fellow class members before the Supreme Court

14   slammed the door. Discovery is needed before a court can determine whether

15   the union has carried its burden of proof by showing subjective good faith by a

16   preponderance of the evidence. *See Franklin v. Fox*, 2001 WL 114438, *5 (N.D.

---

13.  The union cites Justice Kennedy's concurrence in *Wyatt v. Cole*, 504
     U.S. 158, 174 (1992), but Justice Kennedy never stated or suggested that
     a defendant's reliance on a statute constitutes subjective "good faith."
     Instead, Justice Kennedy made clear that subjective good faith was a sep-
     arate inquiry from whether the defendant had acted in an objectively rea-
     sonable manner, and that reliance on a statute would *not* automatically
     prove the existence of subjective good faith. *See id.* at 174 (Kennedy, J.,
     concurring) ("[T]here is support in the common law for the proposition
     that a private individual's reliance on a statute, prior to a judicial deter-
     mination of unconstitutionality, is considered reasonable as a matter of
     law; *and therefore under the circumstances of this case, lack of probable cause
     can only be shown through proof of subjective bad faith.*" (emphasis added)).

1   Cal.) ("A good faith defense . . . allows [plaintiffs] to conduct discovery of the

2   subjective intent of the private defendant.").[14]

> **E.   The Union's Purported Reliance On *Abood* and California's Agency-Shop Statutes Is Incapable Of Establishing A "Good Faith" Defense Because The Supreme Court Had Issued Repeated Warnings That Public-Sector Agency Shops Were Constitutionally Dubious**

3   The union's inability to satisfy the most-analogous-tort rule renders its

4   supposed reliance on *Abood* and California law irrelevant to liability under sec-

5   tion 1983. But even if this Court were to ignore the most-analogous-tort rule

6   and allow the union to assert a good-faith defense, the union's purported reli-

7   ance on *Abood* or California's state's agency-shop laws is insufficient to estab-

8   lish "good faith."

---

14.   In *Danielson v. Inslee*, the district court admitted that "the subjective state of mind of a party asserting good faith is a common inquiry in cases discussing the defense." *Danielson v. Inslee*, No. 3:18-cv-05206-RJB (W.D. Wash.), ECF No. 50 at 6. Yet the court insisted that the defendants need not produce evidence of their subjective state of mind and refused to allow the plaintiffs to take discovery. *Id.* at 6–7. Instead, the Court wrote that "applying the subjectivity standard to this case results in a perverse outcome," because "'[a]ny subjective belief [the union] could have had that the precedent was wrongly decided and should be overturned would have amounted to telepathy.'" *Id.* at 6 (citation omitted). That statement contradicts *Janus*, which observed that "public-sector unions have been on notice for years regarding this Court's misgivings about *Abood*" and declared that "any public-sector union seeking an agency-fee provision in a collective-bargaining agreement must have understood that the constitutionality of such a provision was uncertain." *Janus*, 138 S. Ct. at 2484–85 (2018). And even if *Danielson* were correct to equate the expectation of *Abood*'s demise with "telepathy," that still does not absolve the union of its duty to produce evidence showing its officers' subjective state of mind.

---

1    The Supreme Court had repeatedly warned the union defendants that it
2    had grave misgivings about the constitutionality of public-sector agency shops
3    long before declaring them unconstitutional in *Janus*. In 2012, the Supreme
4    Court announced that its rulings upholding the constitutionality of public-sec-
5    tor agency shops were an "anomaly." *Knox v. Service Employees Int'l Union,*
6    *Local 1000*, 567 U.S. 311 (2012). And *Harris v. Quinn*, 134 S. Ct. 2618 (2014),
7    contained a lengthy discussion that sharply criticized *Abood*. *See id.* at 2632–
8    34 (2014) (criticizing *Abood*'s analysis as "questionable on several grounds"
9    and claiming that *Abood* "seriously erred" and "fundamentally misunder-
10   stood" the earlier decisions of the Court). Two years after *Harris*, an eight-
11   member Supreme Court deadlocked on whether to overrule *Abood* in *Frie-*
12   *drichs v. California Teachers Association*, 136 S. Ct. 1083 (2016). The unions
13   have been on notice for at least six years that the constitutionality of public-
14   sector agency shops was in doubt, and any reasonable observer knew (or
15   should have known) that *Abood* was on thin ice.

16   Indeed, the Supreme Court specifically said in *Janus* that "public-sector
17   unions have been on notice for years regarding this Court's misgivings about
18   *Abood*" and that "any public-sector union seeking an agency-fee provision in a
19   collective-bargaining agreement must have understood that the constitution-
20   ality of such a provision was uncertain." *Janus*, 138 S. Ct. at 2484, 2485. The
21   Supreme Court made these statements in the context of discussing stare deci-
22   sis, but the Court's observations are equally applicable (and equally binding)
23   when considering the unions' attempted good-faith defense. The union claims
24   it should be immune from liability because it was entitled to rely on *Abood* and
25   the statutes that authorized agency shops in public employment — yet the Su-
26   preme Court specifically held in *Janus* that public-sector unions had received
27   fair warning of the constitutional problems with agency shops.

1    The union acknowledges that the Supreme Court warned it of the risks of
2    relying on *Abood* in these pre-*Janus* decisions, but it claims that these warnings
3    are irrelevant to its "good-faith defense" because the justices merely dispar-
4    aged *Abood* and stopped short of explicitly overruling it. *See* Dkt. No. 63-1 at
5    11. The plaintiffs, however, are not contending that the unions were legally ob-
6    ligated to halt the collection of agency fees before the Supreme Court an-
7    nounced its ruling in *Janus* — and no one in this case is arguing that the union
8    defendants were required to terminate their agency shops after *Knox* or *Harris*.
9    The issue before the Court is whether the unions can keep the money that they
10   took now that *Janus* has declared public-sector agency shops unconstitutional,
11   and that depends on whether the unions can: (i) assert a good-faith defense
12   under section 1983, and (ii) show that they relied in good faith on assurances
13   that the statutes and precedents on which they relied were constitutional, even
14   though the Supreme Court had repeatedly called them into question. The un-
15   ions cannot make that showing when *Janus* says that the unions had been on
16   notice of the constitutional problems with *Abood*.

17   More importantly, the unions knew (or should have known) that *Janus*
18   would be retroactive,[15] and that *Wyatt v. Cole* would make any good-faith de-
19   fense a tough sell when the most analogous common-law tort is conversion.
20   *See Wyatt*, 504 U.S. at 164. Of course, the unions had every right to continue
21   collecting agency fees in the hope that a *Janus*-like ruling might be averted or
22   at least postponed — and if *Janus* had been decided the other way, the unions
23   would have been allowed to keep the money. So it was perfectly sensible for

---

15.  *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 96 (1993) ("[A] rule
     of federal law, once announced and applied to the parties to the contro-
     versy, must be given full retroactive effect by all courts adjudicating fed-
     eral law.").

1   the unions to continue taking agency fees notwithstanding the warnings from

2   the Supreme Court, and it would not have been prudent for them to halt the

3   collection of those fees when there was at least a chance that the Supreme

4   Court might stop short of issuing a *Janus*-type pronouncement. But that does

5   not allow the unions to *keep* the money that they took in violation of the Con-

6   stitution when the Supreme Court drops the other shoe. The union collected

7   these fees with full knowledge of the risk that the money might have to be re-

8   turned, and it cannot pretend that it acted without knowledge of these risks.

9       Finally, the union's complaints about retroactive liability ignore the fact

10   that retroactive civil liability is ubiquitous in the law.[16] It is not at all apparent

11   how a refund of pre-*Janus* agency fees would be "corrosive to the rule of

12   law"[17] when countless other entities face retroactive civil liability on account

13   of new statutes and new court decisions, and when losing litigants often face

14   liability for actions that they reasonably believed to be lawful at the time they

---

16.   *See, e.g.*, *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976) (upholding retroactive civil liability in the Black Lung Benefits Act of 1972 after applying rational-basis review); *United States v. Monsanto Co.*, 858 F.2d 160, 173–75 (4th Cir. 1988) (upholding retroactive civil liability under CERCLA (Superfund)); *id.* at 174 (noting that other courts "have held uniformly that retroactive operation [of Superfund] survives the Supreme Court's tests for due process validity"); *Landgraf v. USI Film Products*, 511 U.S. 244, 267 (1994) ("[T]he potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope."); *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1325 (2016) ("[C]ongressional power to make valid statutes retroactively applicable to pending cases has often been recognized."); Noah Feldman, *Cosmopolitan Law?*, 116 Yale L.J. 1022, 1056 n.140 (2007) ("Following *Calder v. Bull*, 3 U.S. (3 Dall.) 386 (1798), retroactive civil liability has often been found not to violate the Ex Post Facto Clause or constitutional due process.").

17.   ECF No. 63-1 at 11.

1   made them. *See SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947) ("Every case
2   of first impression has a retroactive effect, whether the new principle is an-
3   nounced by a court or by an administrative agency."). The union's insinuation
4   that other private parties will face "catastrophic liability" if the Court accepts
5   the plaintiffs' arguments ignores the fact that a good-faith defense may remain
6   available when the most analogous common-law tort incorporates a negligence
7   or other *mens rea* requirement, and it ignores the fact that the statute of limita-
8   tions will protect against ruinous or unreasonably large retroactive liability.

### F.   The Union Has Not Proven That It Complied With Pre-*Janus* Case Law

9   There is yet another insurmountable obstacle to the union's good-faith de-
10   fense: It has not proven that its pre-*Janus* agency shops complied with the Su-
11   preme Court's pronouncement in *Abood v. Detroit Board of Education*, 431 U.S.
12   209, 239–40 (1977). The union appears to believe that *Abood* gave it carte
13   blanche to collect agency fees from non-union employees, but *Abood* imposed
14   considerable limits on a public-employee union's ability to extract money from
15   non-union members. Under *Abood*, public-employee unions could require
16   non-members to pay only for union activities that were non-ideological, and
17   they were strictly forbidden to require an employee to "contribute to the sup-
18   port of an ideological cause he may oppose as a condition of holding a job."
19   *Abood*, 431 U.S. at 235. So the union must show that it complied with *Abood*'s
20   restrictions on the use of agency fees before it can establish a good-faith de-
21   fense under section 1983; the union cannot ask a court to assume compliance
22   with *Abood* without presenting evidence of this.

23   And it will be a tall order for the unions to show that they complied with
24   *Abood*. As *Janus* recognized, "*Abood*'s line between chargeable and non-

chargeable union expenditures has proved to be impossible to draw with pre-cision." *Janus*, 138 S. Ct. at 2481. And because the unions are asserting good-faith as an affirmative defense, it is they who must bear the burden of estab-lishing compliance with the admittedly hazy line between the "chargeable" and "nonchargeable" expenditures. *Cf. Abood*, 431 U.S. at 239–40 ("Since the unions possess the facts and records from which the proportion of political to total union expenditures can reasonably be calculated, basic considerations of fairness compel that they, not the individual employees, bear the burden of proving such proportion."). In all events, this is a factual question that cannot be resolved until the defendants produce evidence and the plaintiffs have had an opportunity to take discovery. *See* Fed. R. Civ. P. 56(d)–(e); Declaration of Jonathan F. Mitchell (attached as Exhibit 1).[18]

---

18.   The union defendant in *Danielson* had no answer to this other than to say the plaintiffs had failed to allege non-compliance with *Abood* in their com-plaint. *See Danielson v. Inslee*, No. 3:18-cv-05206-RJB (W.D. Wash.), ECF No. 49 at 9 ("Plaintiffs have not alleged that WFSE failed to comply with pre-*Janus* law."). But a plaintiff is not required to anticipate and plead around affirmative defenses. *See Gomez v. Toledo*, 446 U.S. 635, 641 (1980). The burden is on the *union* to plead and prove compliance with *Abood*, because it is asserting good-faith reliance on *Abood* as an affirma-tive defense to the plaintiffs' claims. And the district court in *Danielson* simply ignored this argument without saying whether the plaintiffs had forfeited the argument by failing to plead non-compliance with *Abood*. Therefore, out of an abundance of caution, the plaintiffs will seek leave to amend their complaint and add that the defendants must prove com-pliance with *Abood* before they can establish a good-faith defense under section 1983. Although it is not necessary to plead around an affirmative defense in this manner, the union may attempt to use this omission in the complaint as an excuse for failing to prove compliance with *Abood*, and it is possible that at least one district court has already used this omission

### G. The Union's Good-Faith Defense Does Not Confer Immunity From The Plaintiffs' Claims For Equitable Monetary Relief Such As Restitution And Unjust Enrichment

There is one final and fatal problem with the union's "good faith" defense: the defenses of qualified immunity and "good faith" provide immunity only from *damages*. They are inapplicable to claims for equitable relief of any sort—including claims for equitable monetary relief such as backpay, restitution, or unjust enrichment. *See Wood v. Strickland,* 420 U.S. 308, 315 n.6 (1975), *overruled in part on other grounds, Harlow v. Fitzgerald,* 457 U.S. 800 (1982) ("[I]mmunity from damages does not ordinarily bar equitable relief as well."); *Brown v. Bathke*, 566 F.2d 588, 593 (8th Cir. 1977) ("The monetary award represents an equitable restitution of salary unlawfully withheld. . . . We therefore need not decide whether the Board members acted in good faith, since the qualified immunity enunciated in *Wood v. Strickland*, 420 U.S. 308 (1975), applies only to damages, not to equitable relief.").

The plaintiffs have sued for a refund of money that was taken in violation of the Constitution. *See* Complaint at ¶ 33(d). That is an equitable claim for restitution or unjust enrichment rather than a demand for money damages. Indeed, the plaintiffs were careful to avoid the word "damages" in their complaint, so that their refund request would be properly construed as an equitable demand for monetary relief rather than a damages claim that might be subordinated to a qualified-immunity or "good faith" defense.

The union suggests throughout its brief that the "good faith" defense shields defendants from all forms of "monetary liability," but it cites no authority to support the idea that qualified immunity or "good faith" defenses

as a reason to ignore rather than address the plaintiffs' arguments on this issue.

1  should extend to equitable remedies. The defendants bear the burden of show-
2  ing that their proposed affirmative defense extends beyond claims for dam-
3  ages, and they present no argument or authorities to this effect. Neither did
4  the district court in *Danielson v. Inslee*, which made no attempt to rebut the
5  plaintiffs' observation that claims for equitable monetary relief are not subject
6  to qualified immunity or "good faith" defenses.

## II.   THE PLAINTIFFS ARE ENTITLED TO A REFUND UNDER STATE TORT LAW, WHICH HAS NO GOOD-FAITH DEFENSE

7  Even if the union can manage to escape liability under section 1983 by in-
8  voking a "good-faith defense," the union would remain liable to the plaintiffs
9  under state tort law — and there is no good-faith defense to the state-law tort
10  of conversion. *See Poggi v. Scott*, 139 P. 815, 816 (Cal. 1914) ("The foundation
11  for the action of conversion rests neither in the knowledge nor the intent of
12  the defendant. It rests upon the unwarranted interference by defendant with
13  the dominion over the property of the plaintiff from which injury to the latter
14  results. Therefore neither good nor bad faith, neither care nor negligence, nei-
15  ther knowledge nor ignorance, are of the gist of the action."). The union can-
16  not defend its tortious behavior by relying on the state statutes that authorized
17  public-sector agency shops, because those statutes are unconstitutional and an
18  unconstitutional statute cannot provide a defense to a state-law tort claim. *See*
19  *Norton v. Shelby County*, 118 U.S. 425, 442 (1886) ("[A]n unconstitutional act
20  is not a law; it confers no rights; it imposes no duties; it affords no protection;
21  it creates no office; it is, in legal contemplation, as inoperative as though it had
22  never been passed."); *Chicago, Indianapolis, & Louisville Ry. Co. v. Hackett*, 228
23  U.S. 559, 566 (1913) ("[A]n unconstitutional act is not a law, and can neither
24  confer a right or immunity nor operate to supersede any existing valid law.").

1   For this reason, the union's claim that the California Educational Employment

2   Relations Act (EERA) gives the Public Employment Relations Board (PERB)

3   exclusive jurisdiction is groundless. The statutes authorizing the collection of

4   agency fees are to be treated as though they never existed, which means the

5   conduct of which the plaintiffs complain is not "arguably protected . . . under

6   EERA." *El Rancho Unified School Dist. v. Nat'l Educ. Ass'n*, 33 Cal. 3d 946, 960

7   (1983). The union also thinks it can escape liability under state law by invoking

8   section 1159 of the California Government Code, but this statute is unconsti-

9   tutional for the reasons provided in the *Wilford* plaintiffs' brief, and we incor-

10  porate their discussion (and the other arguments in their brief) by reference.

### III. THE UNION'S CHANGE OF CONDUCT IN RESPONSE TO A SUPREME COURT RULING INVOLVING OTHER PARTIES DOES NOT MOOT THE PLAINTIFFS' CLAIMS FOR PROSPECTIVE RELIEF

11   Finally, the plaintiffs' claims for prospective relief are not moot because a

12  defendant's voluntary cessation of unlawful conduct does not moot an Article

13  III case or controversy. The plaintiffs explained their position on this matter

14  when opposing the state defendants' motion to dismiss, and they respectfully

15  incorporate those arguments by reference. *See* ECF No. 57. The Court rejected

16  those arguments when granting the state defendants' motion to dismiss, and

17  we respect the Court's decision and do not seek to relitigate those matters

18  here. But we note that the union's arguments for mootness are weaker than

19  the State's because courts must presume that a State acts in good faith when

20  it changes its behavior in the middle of a lawsuit. *See Am. Cargo Transp., Inc. v.*

21  *United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) ("[C]essation of the alleg-

22  edly illegal conduct by government officials has been treated with more solici-

23  tude by the courts than similar action by private parties." (quoting *Ragsdale v.*

1  *Turnock,* 841 F.2d 1358, 1365 (7th Cir. 1988)). Private entities such as labor

2  unions get no such indulgence from the courts.

3  **CONCLUSION**

4  For these reasons, as well as those submitted by the *Wilford* plaintiffs, the

5  union defendants' motion to dismiss and for judgment in the pleadings, and in

6  the alternative for summary judgment, should be denied.


Respectfully submitted.

/s/ Jonathan F. Mitchell

| | |
|---|---|
| TALCOTT J. FRANKLIN* | JONATHAN F. MITCHELL* |
| Texas Bar No. 24010629 | Texas Bar No. 24075463 |
| Talcott Franklin PC | Mitchell Law PLLC |
| 1920 McKinney Avenue 7th Floor | 106 East Sixth Street, Suite 900 |
| Dallas, Texas 75201 | Austin, Texas 78701 |
| (214) 736-8730 (phone) | (512) 686-3940 (phone) |
| (800) 727-0659 (fax) | (512) 686-3941 (fax) |
| tal@talcottfranklin.com | jonathan@mitchell.law |
| | |
| CHRISTOPHER HELLMICH | BRADLEY BENBROOK |
| California Bar No. 224169 | California Bar No. 177786 |
| Hellmich Law Group, PC | Benbrook Law Group, PC |
| 5753-G E. Santa Ana Canyon Rd. #512 | 400 Capitol Mall, Suite 2530 |
| Anaheim Hills, California 92807 | Sacramento, California 95814 |
| (949) 287-5708 (phone) | (916) 447-4900 (phone) |
| chellmich@hellmichlaw.com | (916) 447-4904 (fax) |
| | brad@benbrooklawgroup.com |
| * admitted *pro hac vice* | |
| | *Counsel for Plaintiffs and* |
| Dated: December 21, 2018 | *the Proposed Class* |

# CERTIFICATE OF SERVICE

I certify that on December 21, 2018, I served this document through CM/ECF upon:

Scott A. Kronland
Jeffrey B. Demain
Rebecca C. Lee
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
(415) 421-7151
skronland@altber.com
jdemain@altber.com
rlee@altber.com

*Counsel for Union Defendants*

Peter H. Chang
Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102-7004
(415) 510-3776
peter.chang@doj.ca.gov

*Counsel for State Defendants*

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiffs and the Proposed Class*