1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Jonathan F. Mitchell *
jonathan@mitchell.law
Mitchell Law PLLC
106 East Sixth Street, Suite 900
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3940 (fax)

* admitted *pro hac vice*

Christopher Hellmich
chellmich@hellmichlaw.com
California Bar No. 224169
Hellmich Law Group, PC
5753-G E. Santa Ana Canyon Rd. #512
Anaheim Hills, California 92807
(949) 287-5708 (phone)
(714) 974- 7733 (fax)

*Counsel for Plaintiffs and Proposed Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| **Georgia Babb**; **John J. Frangiamore Jr.**; **William Happ**; **Aaron Holbrook**, **Michelle Pecanic-Lee**; **David Schmus**; and **Abram van der Fluit**, as individuals, and on behalf of all others similarly situated,<br><br>Plaintiffs, | Case No. 8:18-cv-00994-JLS-DFM<br><br><br>**Plaintiffs' Third Amended Class-Action Complaint** |

v.

**California Teachers Association**;
**United Teachers of Los Angeles**, as
representative of the class of all
chapters and affiliates of the
California Teachers Association;
**National Education Association**;
**Eric Banks**, **Priscilla Winslow**,
**Erich Shiners**, and **Arthur A.
Krantz**, in their official capacities as
chairman and members of the
California Public Employment
Relations Board,

               Defendants.

1      Georgia Babb, John J. Frangiamore Jr., William Happ, Aaron Holbrook,

2  Michelle Pecanic-Lee, David Schmus, and Abram van der Fluit are current

3  or former public-school teachers who bring this class action on behalf of

4  themselves and all others similarly situated, seeking redress for the defend-

5  ants' past and ongoing violations of their constitutionally protected rights.

6  The defendants have violated the representative plaintiffs' constitutional

7  rights by forcing them to pay compulsory "fair share service fees" to the

8  California Teachers Association and its chapters and affiliates as a condition

9  of their employment, even though the representative plaintiffs do not belong

10 to this union and do not wish to subsidize the union's activities. The repre-

11 sentative plaintiffs seek a refund of all unlawfully collected "fair share ser-

12 vice fees," an injunction that forbids the defendants to collect union fees

13 from nonmembers without their consent, and costs and attorneys' fees under

14 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

16      1.  The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28

17 U.S.C. § 1343, and 28 U.S.C. § 1367.

18      2.  Venue is proper because a substantial part of the events giving rise to

19 the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

21      3.  Plaintiff Georgia Babb resides in Sandoval County, New Mexico.

22      4.  Plaintiff John J. Frangiamore Jr. resides in Orange County, California.

23      5.  Plaintiff William Happ resides in Butte County, California.

24      6.  Plaintiff Aaron Holbrook resides in Riverside County, California.

25      7.  Plaintiff Michelle Pecanic-Lee resides in Los Angeles County, Cali-

26 fornia.

8. Plaintiff David Schmus resides in Orange County, California.

9. Plaintiff Abram van der Fluit resides in Los Angeles County, California.

10. Defendant California Teachers Association (CTA) is a labor union whose offices are located at 1705 Murchison Drive, Burlingame, California 94010. It has more than 1,300 chapters and affiliates throughout the State.

11. Defendant United Teachers of Los Angeles is a local union chapter affiliated with the California Teachers Association. Its offices are located at 303 Wilshire Boulevard, 10th Floor, Los Angeles, California 90010. It is sued as representative of the class of all chapters and affiliates of the CTA.

12. Defendant National Education Association (NEA) is a labor union whose headquarters are located at 1201 16th Street NW, Washington, D.C. The NEA is affiliated with the CTA.

13. Defendants Eric Banks, Priscilla Winslow, Erich Shiners, and Arthur A. Krantz are members of the California Public Employment Relations Board, the entity that oversees public-sector collective bargaining in California and administers the State's labor and collective-bargaining laws, including Cal. Gov't Code § 3546, which the defendants are challenging as unconstitutional. They are all sued in their official capacities.

## STATEMENT OF THE CLAIM

14. Ms. Babb is a public-school teacher who was employed by the Nuview School District in California from 2000 through 2006. She is currently employed by the Rio Rancho Public Schools in New Mexico. While she was teaching at Nuview, Ms. Babb refused to join the CTA or its affiliates because she disapproved of their political advocacy and collective-bargaining activities and did not wish to support them in any way. Nevertheless, Ms.

Babb was forced to pay "fair share service fees" to the CTA as a condition of her continued employment. *See* Cal. Gov't Code § 3546(a).

15.  Mr. Frangimore is a public-school teacher who currently works in a non-union school district, but previously worked for the Compton Unified School District (1990–96) and the Bellflower Unified School District (1996–2016), both of which were agency shops. Mr. Frangimore refused to join the CTA or its affiliates during that time because he disapproved of their political advocacy and collective-bargaining activities and did not wish to support them in any way. Nevertheless, Mr. Frangimore was forced to pay "fair share service fees" to the CTA as a condition of his continued employment. *See* Cal. Gov't Code § 3546(a).

16.  Mr. Happ is a retired public-school teacher who taught in the California public schools for 27 years. Mr. Happ refused to join the CTA or its affiliates because he disapproved of their political advocacy and collective-bargaining activities and did not wish to support them in any way. Nevertheless, Mr. Happ was forced to pay "fair share service fees" to the CTA as a condition of his continued employment. *See* Cal. Gov't Code § 3546(a).

17.  Mr. Holbrook is a public-school teacher who taught in the San Jacinto Unified School District until June of 2017. He now teaches in a non-union charter school. Mr. Holbrook refused to join the CTA or its affiliates because he disapproved of their political advocacy and collective-bargaining activities and did not wish to support them in any way. Nevertheless, Mr. Holbrook was forced to pay "fair share service fees" to the CTA as a condition of his continued employment. *See* Cal. Gov't Code § 3546(a).

18.  Ms. Pecanic-Lee is a public-school teacher for the Hacienda La Puente Unified School District. Ms. Pecanic-Lee refuses to join the CTA or

1    its affiliates because she disapproves of their political advocacy and collec-

2    tive-bargaining activities and does not wish to support them in any way.

3    Nevertheless, Ms. Pecanic-Lee was forced to pay "fair share service fees" to

4    the CTA as a condition of her continued employment. *See* Cal. Gov't Code

5    § 3546(a).

6       19.  Mr. Schmus is a former public-school teacher who taught in the Hac-

7    ienda La Puente Unified School District from 2000 through 2015. Mr.

8    Schmus refused to join the CTA or its affiliates because he disapproved of

9    their political advocacy and collective-bargaining activities and did not wish

10    to support them in any way. Nevertheless, Mr. Schmus was forced to pay

11    "fair share service fees" to the CTA as a condition of his continued em-

12    ployment. *See* Cal. Gov't Code § 3546(a).

13       20. Mr. van der Fluit is a public-school teacher in the Los Angeles School

14    District. Mr. van der Fluit refuses to join the CTA or its affiliates because he

15    disapproves of their political advocacy and collective-bargaining activities

16    and does not wish to support them in any way. Nevertheless, Mr. van der

17    Fluit was forced to pay "fair share service fees" to the CTA as a condition of

18    his continued employment. *See* Cal. Gov't Code § 3546(a).

19       21.  The compelled subsidies that the representative plaintiffs and their

20    fellow class members were forced to pay to the California Teachers Associa-

21    tion and its affiliates as a condition of their employment violates their consti-

22    tutional rights. *See Janus v. Am. Fed'n of State, Cty., & Mun. Employees,*

23    *Council 31*, 138 S. Ct. 2448 (2018).

24       22. The Supreme Court's ruling in *Janus* is retroactive. *See Harper v.*

25    *Virginia Dep't of Taxation*, 509 U.S. 86, 96 (1993) ("[A] rule of federal law,

26    once announced and applied to the parties to the controversy, must be given

full retroactive effect by all courts adjudicating federal law."). Because *Janus* is retroactive, any pre-*Janus* collection of agency fees or "fair share service fees" was unlawful and unconstitutional, regardless of whether state law or pre-*Janus* court rulings purported to authorize this conduct.

23. The law of California authorizes the CTA and its affiliates to extract money from non-union members as a condition of their employment. *See, e.g.,* Cal. Gov't Code § 3546 (authorizing CTA to collect "fair share service fees" from nonmembers as a condition of employment) (attached to the complaint as Exhibit 1); Cal. Gov't Code § 3546.3 (authorizing CTA to compel "religious objectors" to remit money to a union-approved charity in lieu of a "fair share service fee") (attached to the complaint as Exhibit 2). Each of these statutes is unconstitutional, along with any other statute that authorizes or establishes agency shops in public employment, or that allows a public-employee union to garnish the wages of public employees without first securing the employee's affirmative, written, and freely given consent.

24. The California Teachers Association and its affiliates were acting under color of state law by imposing and collecting these "fair share service fees." *See* Cal. Gov't Code § 3546; *Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982).

25. The representative plaintiffs and their fellow class members are therefore entitled to a refund of the money that was forcibly taken from them in violation of their constitutionally protected rights. Indeed, the text of 42 U.S.C. § 1983 compels this result. *See* 42 U.S.C. § 1983.

26. The affirmative defense of qualified immunity is unavailable to private entities such as labor unions. *See Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

1       27.  There is no "good faith" immunity for private parties who violate 42

2    U.S.C. § 1983 by depriving others of their constitutional rights. *See Howerton*

3    *v. Gabica*, 708 F.2d 380, 385 n.10 (9th Cir. 1983) ("[T]here is no good faith

4    immunity under section 1983 for private parties who act under color of state

5    law to deprive an individual of his or her constitutional rights.").

6       28.  Even if the unions could attempt to assert an affirmative defense such

7    as qualified immunity or "good faith," those defenses can provide immunity

8    only from money damages, and they do not confer immunity when a plaintiff

9    seeks equitable monetary relief such as backpay, restitution, or unjust en-

10   richment, which the representative plaintiffs and their fellow class members

11   are asserting here. *See Wood v. Strickland,* 420 U.S. 308, 315 n.6 (1975), *over-*

12   *ruled in part on other grounds, Harlow v. Fitzgerald,* 457 U.S. 800 (1982)

13   ("[I]mmunity from damages does not ordinarily bar equitable relief as

14   well.").

15      29.  Finally, even if this Court were to allow the unions to assert a "good

16   faith" defense to the plaintiffs' section 1983 claims, the unions must *still*

17   show that they complied with pre-*Janus* case law before they can escape lia-

18   bility under section 1983. *See Abood v. Detroit Board of Education*, 431 U.S.

19   209, 239–40 (1977). Under *Abood*, public-employee unions were permitted to

20   require non-members to pay only for union activities that were non-

21   ideological, and they were forbidden to require an employee to "contribute

22   to the support of an ideological cause he may oppose as a condition of hold-

23   ing a job." *Abood*, 431 U.S. at 235; *see also R.J. Reynolds Tobacco Co. v. Shew-*

24   *ry*, 423 F.3d 906, 916 (9th Cir. 2005). So the union must, at the very least,

25   prove that it complied with *Abood* and pre-*Janus* court rulings before it can

26   establish a "good faith" defense under section 1983.

1   30. The CTA and its leadership and affiliates expected the Supreme

2   Court to overrule *Abood* in *Janus*, so the unions cannot assert that they acted

3   in accordance with a subjective "good faith" belief that the Supreme Court

4   would approve the legality of its actions. This factual contention is likely to

5   have evidentiary support after a reasonable opportunity for further investiga-

6   tion or discovery.

7   31.  The CTA and its affiliates have committed the torts of conversion

8   and trespass to chattels by appropriating money from nonunion agency-fee

9   payers without securing their affirmative, written, and freely given consent,

10  and they are liable in an action for tort, replevin, unjust enrichment, and res-

11  titution. The CTA cannot defend its tortious conduct by relying on Cal.

12  Gov't Code § 3546, because that statute is unconstitutional to the extent it

13  purports to shield a public-employee union's compelled extraction of money

14  from agency-fee payers. Unconstitutional statutes cannot confer immunity

15  on tortious conduct.

16  32.  The representative plaintiffs and their fellow class members are enti-

17  tled to a refund of the agency fees that they were forced to pay in violation of

18  their constitutional rights. The plaintiffs are seeking this recovery under 42

19  U.S.C. § 1983 and state tort law, and they are demanding equitable monetary

20  relief including backpay, restitution, and unjust enrichment. The plaintiffs

21  are also seeking money damages to the extent permitted under immunity

22  doctrines.

23  ## Class Allegations

24  33.  The representative plaintiffs bring this class action under Fed. R. Civ.

25  P. 23(b)(1), (b)(2), and (b)(3). The class includes all individuals who: (1) are

26  or were employed by the State of California or by any public school or school

1    district located in the State of California; (2) are or were nonmembers of

2    CTA who were compelled by CTA and its affiliates to pay "agency fees" or

3    "fair share service fees"—regardless of whether those fees were remitted to

4    the union, its affiliates, or a third-party organization. The class includes eve-

5    ryone who has ever fallen within this definition, including former and retired

6    teachers or teachers who have moved to other States, and it includes anyone

7    who comes within the class definition at any time before the conclusion of

8    this action.

9        34. The number of persons in the class makes joinder of the individual

10   class members impractical.

11       35. There are questions of fact and law common to all class members.

12   Factually, all class members are public employees and union nonmembers

13   compelled to pay "fair share service fees" to the CTA and its affiliates as a

14   condition of employment. Legally, the U.S. Constitution and California tort

15   law afford the same rights to every member of the class.

16       36. The representative plaintiffs' claims are typical of other members of

17   the class, because each member of the class has objected to CTA member-

18   ship yet has been forced by state law and contract provisions to financially

19   support the CTA and its inherently political activities.

20       37. The representative plaintiffs adequately represent the interests of the

21   class, and they have no interests antagonistic to the class.

22       38. A class action can be maintained under Rule 23(b)(1)(A) because sep-

23   arate actions by class members could risk inconsistent adjudications on the

24   underlying legal issues.

25       39. A class action can be maintained under Rule 23(b)(1)(B) because an

26   adjudication determining the constitutionality of compulsory "fair share ser-

PLAINTIFFS' THIRD AMENDED CLASS-ACTION COMPLAINT

vice fees" will, as a practical matter, be dispositive of the interests of all class members.

40. A class action can be maintained under Rule 23(b)(3) because the common questions of law and fact identified in the complaint predominate over any questions affecting only individual class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, all class members are subjected to the same violation of their constitutional rights, but the amount of money involved in each individual's claim would make it burdensome for class members to maintain separate actions.

## Causes of Action

41. The representative plaintiffs and their fellow class members are suing the CTA and its affiliates, and the members of the Public Employment Relations Board under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, each of which supplies a cause of action for the individual and class-wide relief that they are requesting.

42. The representative plaintiffs and their fellow class members are also suing the CTA and its affiliates under the state-law actions of conversion, trespass to chattels, replevin, unjust enrichment, restitution, and any other legal or equitable cause of action that offers relief for this unlawful seizure of her personal property. The representative plaintiffs invoke the supplemental jurisdiction of this court over those state-law claims. *See* 28 U.S.C. § 1367.

## Demand for Relief

43. The representative plaintiffs respectfully request that the court:

    a.    certify a plaintiff class of all nonunion members who have been forced to pay agency fees or "fair share service fees" to the Cal-

1   ifornia Teachers Association or its affiliates or a union-approved

2   third-party organization as a condition of their employment;

3   b.   certify a defendant class of all chapters and affiliates of the Cali-

4   fornia Teachers Association;

5   c.   declare that the representative plaintiffs and their fellow class

6   members have a constitutional right to decline to join or finan-

7   cially support a public-employee union, and that they cannot be

8   forced to pay money to a union or a union-approved third-party

9   entity as a condition of their employment;

10  d.   declare that state tort law protects the right of the representa-

11  tive plaintiffs and their fellow class members not to have their

12  wages garnished or redirected by the CTA or its affiliates with-

13  out their affirmative, written, and freely given consent, and that

14  any federal or state law or collective-bargaining agreement that

15  purports to override these protections of state tort law by allow-

16  ing the CTA to help itself to the wages and paychecks of school

17  employees—or that compels school employees to consent the

18  garnishment of their wages by the CTA or its affiliates as a con-

19  dition of their employment—is unconstitutional and without le-

20  gal effect;

21  e.   declare Cal. Gov't Code § 3546 unconstitutional because it al-

22  lows public-employee unions to extract "fair-share service

23  fees" from nonmembers as a condition of their employment,

24  and permanently enjoin the members of the Public Employment

25  Relations Board, and all of their officers, agents, servants, em-

26  ployees, attorneys, and any other person or entity in active con-

cert or participation with them, from enforcing Cal. Gov't Code § 3546, or any other provision of state law that authorizes or enforces public-employee agency shops;

f.  declare that all collective-bargaining agreements that compel the representative plaintiffs and their fellow class members to pay "agency fees" or "fair share service fees" to the CTA or its affiliates as a condition of their employment violate the constitutional rights of the representative plaintiffs and their fellow class members;

g.  order the CTA and its affiliates, including the NEA, to refund all agency fees or "fair share service fees" that were unconstitutionally or unlawfully extracted from the representative plaintiffs and their fellow class members;

h.  permanently enjoin the CTA and its affiliates, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from taking or redirecting any type of money from the representative plaintiffs, their fellow class members, or any other public employee without first obtaining the employee's affirmative, written, and freely given consent;

i.  permanently enjoin all of the defendants, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing any provision of California law, or any provision of a collective-bargaining agreement, that requires any payment of

1    money as a consequence for exercising one's constitutional

2    right not to join or financially support a public-employee union;

3    j.    award costs and attorneys' fees under 42 U.S.C. § 1988;

4    k.    grant all other relief that the Court may deem just, proper, or

5    equitable.

6

7                                    Respectfully submitted.

8
                                      /s/ Jonathan F. Mitchell
9    TALCOTT J. FRANKLIN*            JONATHAN F. MITCHELL*
     Texas Bar No. 24010629          Texas Bar No. 24075463
10   Talcott Franklin PC             Mitchell Law PLLC
11   1920 McKinney Avenue 7th Floor  106 East Sixth Street, Suite 900
     Dallas, Texas 75201             Austin, Texas 78701
12   (214) 736-8730 (phone)          (512) 686-3940 (phone)
13   (800) 727-0659 (fax)            (512) 686-3941 (fax)
14   tal@talcottfranklin.com         jonathan@mitchell.law

15
     CHRISTOPHER HELLMICH            BRADLEY BENBROOK
16   California Bar No. 224169       California Bar No. 177786
17   Hellmich Law Group, PC          Benbrook Law Group, PC
     5753-G E. Santa Ana Canyon Rd. #512   400 Capitol Mall, Suite 2530
18   Anaheim Hills, California 92807  Sacramento, California 95814
19   (949) 287-5708 (phone)          (916) 447-4900 (phone)
     (714) 974- 7733 (fax)           (916) 447-4904 (fax)
20   chellmich@hellmichlaw.com       brad@benbrooklawgroup.com

21
22   * admitted *pro hac vice*       *Counsel for Plaintiffs and*
                                      *the Proposed Class*
23   Dated: February 27, 2019

24

25

26

1

CERTIFICATE OF SERVICE

2

I certify that on February 27, 2019, I served this document by CM/ECF

3

upon:

4

5

SCOTT A. KRONLAND
JEFFREY B. DEMAIN

6

REBECCA C. LEE
Altshuler Berzon LLP

7

177 Post Street Suite 300

8

San Francisco, CA 94108
415-421-7151 (phone)

9

415-362-8064 (fax)

10

skronland@altber.com

11

jdemain@altber.com
rlee@altshulerberzon.com

12

13

*Counsel for the Union Defendants*

14

PETER H. CHANG

15

Office of the Attorney General
California Department of Justice

16

455 Golden Gate Avenue, Suite 11000

17

San Francisco, California 94102-7004

18

(415) 510-3776 (phone)
(415) 703-1234  (fax)

19

peter.chang@doj.ca.gov

20

*Counsel for the State Defendants*

21

22

/s/ Jonathan F. Mitchell

23

JONATHAN F. MITCHELL
*Counsel for Plaintiffs and Proposed Class*

24

25

26