SCOTT A. KRONLAND (SBN 171693)
JEFFREY B. DEMAIN (SBN 126715)
REBECCA MORYL LEE (SBN 305119)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail:  skronland@altber.com
         jdemain@altber.com
         rlee@altber.com

Attorneys for the Union Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| GEORGIA BABB, *et al.*, | CASE NO.: 8:18-cv-00994-JLS-DFM |
|---|---|
| Plaintiffs, | **NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF UNION DEFENDANTS' MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT** |
| v. | |
| CALIFORNIA TEACHERS ASSOCIATION, *et al.*, | |
| Defendants. | Hearing Date: March 29, 2019<br>Hearing Time: 10:30 a.m.<br>Location: Courtroom 10A |
| | Judge:  The Hon. Josephine L. Staton |

# NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF UNION DEFENDANTS' MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

The Union Defendants advise the Court of the attached Opinion and Order recently issued in *Cook v. Brown*, No. 6:18-CV-01085-AA, ___ F.Supp.3d ___, 2019 WL 982384 (D. Or. Feb. 28, 2019). The Opinion and Order is relevant to the Union Defendants' pending motion because it applies the good faith defense to dismiss the *Cook* plaintiffs' 42 U.S.C. §1983 claim for a refund of fair-share fees collected by the defendant union before issuance of *Janus v. AFSCME Council 31*, 138 S.Ct. 2448 (2018). The Unions in this case have asserted the same defense to Plaintiffs' §1983 claim for a refund of pre-*Janus* fair-share fees. The *Cook* Opinion and Order is also relevant to the Union Defendants' pending motion because it concludes that claims for prospective relief against fair-share fees do not present a live case or controversy where collection of fair-share fees permanently ceased after *Janus*. The Unions have made the same argument here.

Dated: March 4, 2019          Respectfully submitted,

ALTSHULER BERZON LLP
Scott A. Kronland
Jeffrey B. Demain
Rebecca Moryl Lee

By: */s/ Scott A. Kronland*
       Scott A. Kronland

Attorneys for Union Defendants

# EXHIBIT A

2019 WL 982384
Only the Westlaw citation is currently available.
United States District Court, D. Oregon,
EUGENE DIVISION.

Che' S. COOK, et al., Plaintiffs,
v.
Kate BROWN, et al., Defendants.

Case No. 6:18-cv-01085-AA
|
Signed 02/28/2019

**Attorneys and Law Firms**

Jill Gibson, Gibson Law Firm, Portland, OR, Milton L. Chappell, National Right to Work Legal Defense Foundation, Inc., Springfield, VA, Christi C. Goeller, James G. Abernathy, Rebekah C. Millard, Olympia, WA, for Plaintiffs

Carla Scott, Scott J. Kaplan, Oregon Department of Justice, Margaret S. Olney, Bennett, Hartman, Morris & Kaplan, LLP, Portland, OR, Matthew J. Murray, Scott A. Kronland, Altshuler Berzon LLP, San Francisco, CA, Jennifer K Chapman, Salem, OR, for Defendants

## OPINION & ORDER

Ann Aiken, United States District Judge

**\*1** Che' S. Cook, Clifford H. Elliott, J. Scott English, Bethany Harrington, William Lehner, Carmen Lewis, and Trudy Metzger (collectively, "Plaintiffs")[1] were forced to pay compulsory union agency fees to the American Federation of State, County, and Municipal Employees, Council 75 ("AFSCME"). They brought suit against AFSCME as well as against two public officials: Kate Brown and Katy Coba ("State Defendants"). Before the Court is AFSCME's Motion for Judgment on the Pleadings *or*, Motion for Summary Judgment (doc. 24). For the reasons discussed, AFSCME's motion is GRANTED.

## BACKGROUND

Plaintiffs are public employees who were exclusively represented by AFSCME. Oregon's Public Employee Collective Bargaining Act ("PECBA") gives certain public employees the right to unionize and to elect an exclusive representative. AFSCME is such an exclusive representative and PECBA requires it to also represent the interests of non-members during collective bargaining negotiations. To avoid free-riders, the Act authorizes public employers to deduct a fraction of full union dues, often called "agency fees," from non-members to cover the costs of general collective bargaining representation.

Plaintiffs filed an action under 42 U.S.C. § 1983 challenging the constitutionality of these fees. They argued that Defendants were violating their First Amendment rights by forcing compulsory agency fee payments to AFSCME as a condition of their employment, even though Plaintiffs did not belong to this union and did not wish to subsidize the union's activities. Plaintiffs sought (i) a declaratory judgment that all pertinent statutes, rules, regulations, and collective-bargaining agreements that compel agency fees violate the First Amendment; (ii) an injunction against activities that violate the declaratory judgment; and (iii) compensatory damages or restitution from AFSCME for the wrongfully seized agency fees.

While this case was pending, the Supreme Court handed down its decision in *Janus v. AFSCME* on June 27, 2018. ---- U.S. ----, 138 S.Ct. 2448, 201 L.Ed.2d 924 (2018). *Janus* was the culmination of a series of cases that expressed skepticism about the core holding of *Abood v. Detroit Board of Education*—namely, that public employees could be required to pay agency fees as a condition of their employment without violating the First Amendment. 431 U.S. 209, 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). In 2012, the Supreme Court considered *Knox v. Service Employees International Union* and called *Abood* "something of an anomaly," 567 U.S. 298, 311, 132 S.Ct. 2277, 183 L.Ed.2d 281 (2012). Two years later in *Harris v. Quinn*, the Supreme Court was asked to overrule *Abood* but declined to do so even after including notably pointed dicta about *Abood* in its opinion. 573 U.S. 616, 635, 134 S.Ct. 2618, 189 L.Ed.2d 620 (2014) (stating that *Abood* "seriously erred" in its treatment of prior cases and "did not foresee the practical problems that would face objecting nonmembers."). Twelve months later, the Supreme Court again considered

overruling *Abood* in *Friedrichs v. California Teachers Association, et al.*, but split 4-4. ––– U.S. ––––, 136 S. Ct. 1083, 194 L.Ed.2d 255 (2016) (per curiam) ). After over forty years of litigation, the fight to overrule *Abood* finally reached its zenith in *Janus*, which held that compulsory union payments, including agency fees, cannot be collected from nonconsenting employees. 138 S.Ct. at 2486. *Abood* was thus overruled. *Id.*

**\*2** State Defendants submitted declarations evincing immediate compliance with *Janus*'s holding and moved to dismiss the claims against them with prejudice. Plaintiffs failed to file a response and I granted State Defendants' motion.

On October 19, 2018, AFSCME filed a Motion for Judgment on the Pleadings *or*, Motion for Summary Judgment. It argues that it has fully complied with *Janus*, has no intention of doing otherwise, and Plaintiffs' requested prospective relief is therefore moot. It further argues that it is entitled to a good faith defense against claims for monetary liability. For the reasons discussed below, AFSCME's motion is granted and this case is dismissed.

### LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.[2] Fed. R. Civ. P. 56(a). The moving party bears the initial burden to show an absence of a dispute of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). If the moving party meets its burden, the burden shifts to the non-moving party to show that there is a genuine dispute of material fact for trial. *Id.* To meet its burden, "the non-moving party must do more than show there is some metaphysical doubt as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

The court must draw all reasonable inferences in favor of the non-moving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). A "mere disagreement or the bald assertion that a genuine issue of material fact exists" is not sufficient to preclude the grant of summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). When the non-moving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citation and internal quotation marks omitted).

The substantive law governing a claim or defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

### DISCUSSION

AFSCME argues that (i) Plaintiffs' claims for declaratory and injunctive relief are moot because AFSCME stopped collecting agency fees after *Janus*, and (ii) Plaintiffs' claims for monetary relief—both compensatory damages and restitution—must be dismissed because pre-*Janus* agency fees were collected in good faith reliance on state law and controlling Supreme Court precedent.

With respect to mootness, Plaintiffs argue that the voluntary cessation exception precludes dismissing the claims for injunctive relief and that the request for declaratory relief is not moot. With respect to good faith, they argue that private parties have no good faith defense in § 1983 First Amendment cases, and even if they do, that AFSCME cannot claim good faith. They also argue that allowing a good faith defense would fly in the face of the Supreme Court's retroactivity doctrine.

#### I. Mootness

**\*3** AFSCME argues that Plaintiffs' claims for injunctive and declaratory relief are moot because AFSCME immediately ceased its unconstitutional practices after *Janus* and has no plan to reverse course. Plaintiffs argue that the voluntary cessation exception to mootness precludes summary judgment.

Article III of the Constitution grants federal courts the authority to decide cases and controversies. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013). "A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* at 91, 133 S.Ct. 721 (citation and internal quotation

marks omitted). However, the "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case" unless "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (citation and internal quotation marks omitted). A party asserting mootness must also persuade the court that the challenged conduct cannot reasonably be expected to reoccur. *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222, 120 S.Ct. 722, 145 L.Ed.2d 650 (2000).

Ninth Circuit precedent provides the contours of the voluntary cessation inquiry. *Fikre v. FBI*, 904 F.3d 1033, 1038 (9th Cir. 2018). First, the form of government action is critical and can be dispositive. *Id.* "A statutory change ... is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994). As the Eight Circuit has observed, the rigors of the legislative process "bespeak ... finality and not ... opportunistic tentativeness." *Libertarian Party of Arkansas v. Martin*, 876 F.3d 948, 951 (8th Cir. 2017). On the other hand, "an executive action that is not governed by any clear or codified procedures cannot moot a claim." *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015).

### A. *Injunctive Relief*

Plaintiffs' request for injunctive relief is moot. By all indications, AFSCME has stopped collecting agency fees from non-members: it submitted sworn declarations and supporting exhibits evincing full compliance with *Janus*.

For example, Jeneane Ramseier is the Fiscal Director for AFSCME and submitted a sworn declaration stating "AFSCME Council 75 has not retained any fair-share fees deducted from any of the plaintiffs' wages on or after June 27, 2018. None of the plaintiffs had any fair-share fees deducted after June 30, 2018, and all fair-share fees deducted from any of the plaintiffs' wages for the month of June 2018 were refunded." Ramseier Decl. ¶¶ 5–7 (doc. 25). Similarly, Nettie Pye, who is Oregon's State Labor Relations Manager for the Department of Administrative Services ("DAS"), submitted a declaration stating that "following *Janus*, DAS stopped making fair share deductions from all non-union employees effective June 1, 2018. DAS also issued reimbursements for fair share fees collected in June 2018 to all non-union employees." Pye Decl. ¶¶ 3–4 (doc. 11).

AFSCME also provided copies of the letters it sent to state employers who were collecting agency fees on its behalf. *See* Ramseier Decl. Ex. A. These letters requested that the recipient state employers "[i]mmediately cease and desist the deduction of fair share payments[ ] [and] [r]etain any fair share dues that have been deducted but not yet paid to AFSCME, and immediately reimburse employees for those payments." *Id.*

**\*4** These declarations and letters demonstrate that there is no live controversy between the parties necessitating injunctive relief. Plaintiffs seek to enjoin the very act that the petitioner in *Janus* sought to declare unconstitutional. The Supreme Court agreed with the *Janus* petitioner and AFSCME immediately took steps to comply with its holding. Plaintiffs, then, have received the benefit of their request and there is no Article III case or controversy for me to enjoin. *See Danielson v. Inslee*, 345 F.Supp.3d 1336 (W.D. Wash. 2018) (also finding the state-defendants' declarations of compliance with *Janus* and no evidence of equivocation sufficient to find mootness); *see also Yohn v. California Teachers Ass'n*, No. 8:17-cv-00202-JLS-DFM, 2018 WL 5264076, at *5 (C.D. Cal. Sept. 28, 2018) (relying on *Danielson* and concluding the same).

There is also no reasonable expectation that AFSCME will resume collecting agency fees. A change in Supreme Court case law coupled with evidence of AFSCME's compliance with that case law is an interim event that precludes further legal violations. *Cnty. of Los Angeles*, 440 U.S. at 631, 99 S.Ct. 1379 (finding that interim events and no reasonable expectation of continued violations to be sufficient to establish mootness). I see no reason to assume, without evidence, AFSCME's willingness to flagrantly violate the law. While changes in the law resulting from executive action can be reversed with relative ease, a reversal of Supreme Court precedent is analogous to a statutory change that "bespeaks finality" and is not a change that could easily be altered. Therefore, the voluntary cessation doctrine is inapplicable.

### B. *Declaratory Relief*

District courts must decide the merits of a declaratory judgment claim even when an injunction request becomes moot. *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115,

121–22, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). The test for mootness in the declaratory judgment context is whether there is a substantial controversy between parties with adverse legal interests that are sufficiently immediate to warrant declaratory relief. *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174–75 (9th Cir. 2002) (citation and internal quotation marks omitted). In other words, the issue is "whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 925 n.4 (9th Cir. 2000) (citation and internal quotation marks omitted).

Applying that standard here, Plaintiffs' request for declaratory relief is also moot. The Complaint solicits a declaration "that all pertinent statutes, rules, regulations, and collective-bargaining agreements that compel Plaintiffs to pay agency fees to AFSCME ... are unconstitutional [and] null and void." Compl. at 8 (doc. 1). But the action in question, *i.e.*, the forced deduction of agency fees from their paychecks and transfer to AFSCME, is not occurring. There is simply no controversy, let alone an immediate one, to warrant a declaratory judgment. Such a declaration would therefore be an impermissible advisory opinion. *See Akina v. Hawaii*, 835 F.3d 1003, 1011 (9th Cir. 2016) (citing *Princeton Univ. v. Schmid*, 455 U.S. 100, 102, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982) (per curiam) ) ("We do not sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before us.").

Plaintiffs argue that *Janus* only affected the parties before it and does not impact other states' laws automatically. They insist that this Court needs to act for *Janus* to be applied to Oregon's statutes and AFSCME's agreements with the State. But the existence of potentially problematic agreements and laws is not sufficient to overcome mootness.

**\*5** In *City of Los Angeles v. Lyons*, for example, the plaintiff alleged that he was the past victim of an unconstitutional chokehold and that the police department's unconstitutional chokehold policy still existed. 461 U.S. 95, 98–99, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Even so, the Supreme Court concluded that his claim for prospective relief against the policy did not present an Article III case or controversy because the plaintiff could not show a real risk of being personally subject to the policy in the future. *Id.* at 111, 103 S.Ct. 1660

The same is true here: *Janus* held agency fees to be unconstitutional and AFSCME stopped collecting them. AFSCME submitted declarations and letters demonstrating no real risk that Plaintiffs will be subject to the laws, agreements, and conduct that they challenge. No plaintiff is presently being required to pay agency fees and none has posited a realistic possibility that they will be required to do so in the future. Therefore, the declaratory relief request is moot.

### II. Good Faith Defense

AFSCME argues that it should not be held liable for monetary damages because it relied in good faith on presumptively valid state law that was constitutional under then-binding Supreme Court precedent. Plaintiffs make three arguments in response: (i) the good faith defense is unavailable to private parties for First Amendment violations in a § 1983 action; (ii) that even if good faith is available, AFSCME cannot meet the defense's requirements; and (iii) allowing AFSCME to claim good faith would run afoul of the Supreme Court's retroactivity doctrine. Each are addressed below.

#### A. *Private Parties & Good Faith in § 1983 Actions*

The threshold question of whether the good faith defense is available to private parties in § 1983 actions has been answered affirmatively by the Ninth Circuit.

In *Clement v. City of Glendale*, the plaintiff brought a § 1983 action against a towing company, an officer in his individual capacity, and the City of Glendale for towing her car from a hotel parking lot in violation of the Fourteenth Amendment. 518 F.3d 1090, 1092–93 (9th Cir. 2008). The district court granted summary judgment to the officer based on qualified immunity and to the towing company based on good faith. *Id.* at 1093. The Ninth Circuit affirmed. *Id.* at 1097–98. It acknowledged that the Supreme Court in *Wyatt v. Cole* and again in *Richardson v. McKnight* had held open whether private defendants could avail themselves of the good faith defense in a § 1983 action. *Id.* at 1096–97; *Wyatt v. Cole*, 504 U.S. 158, 169, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) ("[W]e do not foreclose the possibility that private defendants faced with § 1983 liability ... could be entitled to an affirmative defense based on good faith."); *Richardson v. McKnight*, 521 U.S. 399, 413–14, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997) ("*Wyatt* explicitly stated

that it did not decide whether or not the private defendants before it might assert, not immunity, but a special 'good-faith' defense ... we do not express a view on this last-mentioned question."). But *Clement* found it appropriate to allow the private towing company to utilize the good faith defense through a facts and circumstances analysis. *Clement*, 518 F.3d at 1097 ("[T]he facts of this case justify allowing Monterey Tow Service to assert such a good faith defense.").

To this Plaintiffs respond that a good faith defense is nevertheless not available to private parties in the First Amendment context and put forth the following syllogism: that a good faith defense to a constitutional tort is only available if an analogous common law tort in 1871 contained an intent element; that there are no analogous common law torts to First Amendment free speech violations with an intent element; that AFSCME committed a free speech violation; and that it therefore cannot avail itself of the good faith defense.

**\*6** But Plaintiffs' syllogism suffers from three flaws. First, Plaintiffs argument fails because affirmative defenses need not relate to or rebut specific elements of an underlying claim. *See Jarvis v. Cuomo*, 660 F.App'x 72, 75–76 (2d Cir. 2016) (extending the good faith defense to a private party in a § 1983 First Amendment action and citing Black's Law Dictionary to distinguish between affirmative defenses and standard defenses in rejecting a nearly identical argument).

Second, Ninth Circuit precedent does not require an analysis of pre-1871 common law torts for extending the good faith defense against an alleged constitutional violation. Instead, the Ninth Circuit's analysis in *Clement* is more akin to the traditional equitable basis for extending good faith than to a formalistic analysis that would require an analogous tort over 130 years ago. To warrant good faith, the *Clement* court explained that the towing company "did its best to follow the law ... the tow was authorized by the police department [and it was] permissible under both local ordinance and state law." *Clement*, 518 F.3d at 1097. The court also explained that the "constitutional defect—a lack of notice to the car's owner—could not have been observed by the towing company at the time when the tow was conducted; there would be no easy way for a private towing company to know whether the owner had been notified or not." *Id.* The court was therefore more concerned about the inequities of holding the private towing company liable than by anchoring its analysis with pre-1871 torts, or the fact that the defense was being raised in a Fourteenth Amendment context rather than in the context of some other constitutional tort.

Third, there *are* analogous common law torts to the First Amendment violation at issue in this case. Namely, the common law tort of abuse of process, which coincidentally was the cause of action in *Wyatt*. 504 U.S. at 164, 112 S.Ct. 1827; *see also Danielson v. AFSCME*, 340 F.Supp.3d 1083, 1086 (W.D. Wash. 2018) (finding that defamation may also constitute an analogous tort to plaintiff's First Amendment claim against the union).

Abuse of process is a "cause[ ] of action against private defendants for unjustified harm arising out of the misuse of governmental processes." *Wyatt*, 504 U.S. at 164, 112 S.Ct. 1827. It required the plaintiff "to establish ... both that the defendant acted with malice and without probable cause." *Id.* at 172, 112 S.Ct. 1827 (Kennedy, J., joined by Scalia, J., concurring).

Here, Plaintiffs' First Amendment claim against AFSCME depends on AFSCME's use of governmental processes to collect agency fees. AFSCME used a state law procedure in violation of the First Amendment to deduct a portion of each non-member's paycheck for the benefit of AFSCME and to the detriment of Plaintiffs. And what makes AFSCME's action a § 1983 constitutional issue is its use of the Oregon statutes authorizing the deduction of agency fees from employees. The Oregon statutes provide the necessary link between AFSCME's actions and the "under color of any statute" requirement of a § 1983 claim. Had AFSCME's actions occurred prior to § 1983's enactment in 1871, then, Plaintiffs could have brought their action under an abuse of process theory. The state-of-mind requirement for an abuse of process claim is malice and acting in good faith would preclude the claim because it would negate the malice requirement. Thus, good faith is not precluded even under Plaintiffs' theory of the defense.

### B. *AFSCME's Good Faith Defense*

**\*7** I find that AFSCME is entitled to a good faith defense against claims of monetary liability. *See Danielson*, 340 F.Supp.3d at 1085 (finding "ample authority" for the good faith defense to apply under nearly identical facts).

Courts have acknowledged that good faith is not susceptible to a precise definition. *See, e.g., In re Agric. Research & Tech. Grp.*, 916 F.2d 528, 536 (9th Cir. 1990) (citing *In re Roco Corp.*, 701 F.2d 978, 984 (1st Cir. 1983) ). The defense has been applied by the Ninth

Circuit without a precise articulation of its contours. *See, e.g., Clement*, 518 F.3d at 1097 (not articulating a standard for good faith for § 1983 claims but still applying it).[3] Nevertheless, traditional principles of equity and fairness are generally understood to underpin the defense. *Danielson*, 340 F.Supp.3d at 1085.

Here, AFSCME collected agency fees in accordance with Oregon's laws and then-controlling Supreme Court precedent that upheld their constitutionality. It would be highly inequitable to hold private parties retroactively liable for § 1983 damages in such a circumstance. Much like the defendant towing company in *Clement*, AFSCME's actions "appeared to be permissible under [the] law." *Clement*, 518 F.3d at 1097. It is highly relevant that AFSCME, as the exclusive bargaining representative, had an official role under Oregon's public labor relations statutes and a legal duty to represent all employees within its respective bargaining unit. The agency fees were collected pursuant to contracts with public employers to pay the costs of that representation. As such, AFSCME was not pursuing its own private interests; its actions were good faith attempts to comply with its statutory obligations.

Whether AFSCME subjectively believed that the Supreme Court was poised to overrule *Abood* is irrelevant, as reading the tea leaves of Supreme Court dicta has never been a precondition to good faith reliance on governing law. And so are any steps it took to mitigate potential disruptions from *Abood*'s possible reversal prior to *Janus*. Given the potentially systemic effects of Supreme Court decisions in areas of great public importance, failure to contingency plan can be ruinous and AFSCME sensibly decided to manage this risk. As the district court in *Danielson* explained, "[a]ny subjective belief [the union] could have had that the precedent was wrongly decided and should be overturned would have amounted to telepathy." 340 F.Supp.3d at 1086.

Precluding a good faith defense based on subjective predictions of when the Supreme Court would overrule precedent would also imperil the rule of law. State officials are entitled to rely on Supreme Court precedent in their official conduct, even if that precedent's reasoning has been questioned. *See Davis v. United States*, 564 U.S. 229, 241, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) (declining to apply exclusionary rule to evidence generated in searches that were consistent with then-binding case law because police were entitled to rely on that precedent, even though its reasoning had been questioned); *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) ("[I]t is objectively reasonable to act on the basis of a statute not yet held invalid."). Similarly, AFSCME justifiably relied on statutes that were valid under *Abood*, and holding it liable for monetary damages solely because certain Justices had expressed doubt about *Abood*'s reasoning would be unworkable and highly inequitable. *See Lemon v. Kurtzman*, 411 U.S. 192, 199, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) ("[S]tatutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct."). AFSCME is therefore entitled to a good faith defense.

### C. *Civil Retroactivity*

**\*8** Finally, Plaintiffs argue that the good faith defense runs afoul of the Supreme Court's retroactivity doctrine because *Janus*'s holding entitles them to monetary damages.

Under the retroactivity doctrine, new Supreme Court holdings are "controlling interpretation[s] of federal law and must be given full retroactive effect in all cases still open on direct review." *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). But retroactive application of a new Supreme Court ruling does not determine what remedy, if any, a party should obtain. *Davis*, 564 U.S. at 243, 131 S.Ct. 2419; *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 750, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995) (no retroactive liability where there is "a previously existing, independent legal basis for denying relief").

Here, there is no indication that *Janus* intended to open the floodgates to retroactive monetary relief. Even if *Janus* does apply retroactively, it does not mean that parties are always retroactively liable for damages. In *Davis v. United States*, for example, the petitioner alleged that the search of his car subsequent to arrest violated the Fourth Amendment. 564 U.S. at 229, 131 S.Ct. 2419. While his appeal was pending, the Supreme Court announced a new rule governing automobile searches incident to arrests which would have required the exclusion of any evidence obtained by the officer through his search of the petitioner's car. *Id.* A strict application of retroactivity would have necessitated this result, but the Supreme Court explained that such a result "erroneously conflates retroactivity with remedy." *Id.* at 230, 131 S.Ct. 2419. Moreover, the Supreme Court found that applying the good faith exception to the exclusionary rule did not run afoul of retroactivity. *Id.*

Applying *Davis*'s reasoning in the instant case makes clear that allowing AFSCME to avail itself of the good faith defense is not contrary to the retroactivity doctrine. Just like the officer in *Davis*, AFSCME was "in strict compliance with then-binding [case] law and was not culpable in any way." *Id.* at 229–30, 131 S.Ct. 2419. While this case was pending the Supreme Court overturned *Abood* and announced a new rule in *Janus* that made agency fees unlawful. AFSCME immediately complied and, for the reasons outlined above, I find that it is entitled to the good faith defense. Since extending the good faith defense only concerns the appropriate remedy for Plaintiffs, it is consistent with the retroactivity doctrine.

### CONCLUSION

For the reasons herein, the Court GRANTS AFSCME's Motion for Judgment on the Pleadings or, Motion for Summary Judgment (doc. 24).

IT IS SO ORDERED.

**All Citations**

--- F.Supp.3d ----, 2019 WL 982384

### Footnotes

1      AFSCME notes that Che' Cook and William Lehner never paid agency fees and that any funds deducted from their wages were pursuant to a signed membership card authorizing the deductions.

2      Because the Court has considered material outside of the pleadings in making its decision, the Court only assesses the parties' claims under the summary judgment standard.

3      Plaintiffs also argue that even if the good faith is available, that *Clement* sets out the "necessary factors" for this defense and AFSCME cannot demonstrate these factors. Nowhere does *Clement* characterize any of these "factors" as "necessary." And what Plaintiffs characterize as "factors" are simply the circumstances that, in totality, persuaded the *Clement* court to find the good faith defense to be appropriate.

**End of Document**      © 2019 Thomson Reuters. No claim to original U.S. Government Works.